DELORES ANDERSON, Plaintiff-Appellant, *v.* DR. MORRISON D. BEERS, Defendant-Appellee.

First District (5th Division)   No. 78-1432

Opinion filed July 13, 1979.

Harry S. Posner, of Chicago, for appellant.

Wildman, Harrold, Allen and Dixon, of Chicago (Richard C. Bartelt and Kay L. Schichtel, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from a jury verdict and judgment for defendant in a medical malpractice action. On appeal she contends that: (1) the trial court erred in failing to direct a verdict for her, and (2) the trial court erred in failing to grant her a new trial on the ground that the jury verdict was against the manifest weight of the evidence.

In her complaint plaintiff alleged that she retained defendant "to perform reconstructive surgery to and augmentation of" her breasts in order to improve their appearance. She further alleged that prior to obtaining her consent defendant failed to inform her of the possible adverse results of the aforesaid surgery. Specifically, she alleged, defendant failed to inform her that following the surgery her breasts "could be deformed, lumpy, scarred, and otherwise repulsive and repellant in appearance." Plaintiff alleged that she would not have consented to the surgery had she been properly warned of the dangers. Defendant denied that he failed to warn plaintiff of the possibility of adverse results following the surgery.

At trial the following pertinent evidence was adduced.

*For the plaintiff*

*Dr. J. Vickers Brown, under section 60*

He is a plastic surgeon employed by defendant. He described plastic surgery as encompassing both reconstructive and cosmetic or aesthetic surgery. On June 21, 1973, he interviewed plaintiff to determine her medical history. Upon examination he determined that she had a "pstosis or sagging of the breasts" and "fibrosistic disease," a possible precancerous condition. The right breast had a "scar deformity" resulting from a prior surgery. There was no scar tissue on the left breast. Plaintiff desired assistance to improve the appearance of her breasts. The surgery required for such improvement would be performed by defendant and consisted of a two-stage procedure. The first stage was a subcutaneous mastectomy on both sides while the second was a reconstruction involving the insertion of augments or implants in the breasts. Distortion or "lumpiness" of the breasts and formation of scar tissue could result in about 20% of the cases. The standard practice prior to such surgery was to inform the patient as to any adverse results which might occur. He did not warn plaintiff of such adverse results nor did defendant do so in his presence. The lumpiness and distortion of plaintiff's breasts resulting from the operation performed by defendant cannot be corrected 100%.

*Dr. Morrison D. Beers, under section 60*

He is a physician and surgeon specializing in plastic and reconstructive surgery. He first saw plaintiff in his office on June 21, 1973. Dr. Brown initially interviewed her and then left the room. Plaintiff was very concerned about the appearance of her breasts, having had a portion of the right breast removed earlier. Upon examination he determined that she had fibrosistic disease which indicated a possibility of cancer. She feared the possibility of losing her entire right breast or developing cancer of the breast. He admitted that he did not record her concerns in his notes.

At the interview he informed plaintiff that the purpose of the contemplated surgery would be to make her breasts more attractive. He reviewed the entire operation with plaintiff, informing her that additional corrective surgery is often required in such cases and that because she had especially lax skin the operation "was not an entirely routine affair." He told her there would be "wrinkling" and "looseness," but did not specifically use the word "lumpy." He subsequently performed the surgery on her.

He again examined plaintiff on October 11, 1973, two months after the operation, and determined that the skin on her breasts had not "firmed in" as expected. He admitted that the results of the operation were unacceptable, but he did warn her of those adverse results prior to the surgery. He admitted that she needs additional corrective surgery. He informed her prior to the original surgery that "scars often have to be revised and the tissue skin envelope has to be revised." He also informed her that her fibrosistic disease could make the healing following the operation a more complicated procedure.

*Delores Anderson, on her own behalf*

In 1968 she had a large cyst removed from her right breast. On June 21, 1973, she saw defendant for the purpose of improving the appearance of her breasts and having loose flesh removed from her stomach area. She "wanted a normal breast." Defendant and Dr. Brown told her of a successful operation and stated that there was no doubt her breasts would be "better than perfect." They did not warn her of any possible adverse results. They did not tell her, prior to the surgery, that additional surgery might be required or that she had fibrosistic disease which might cause problems. Had defendant not assured her of "pleasant, normal breasts" she would not have consented to the surgery. She is now very unhappy and humiliated with her breasts. She frequently has pain in the breasts.

On cross-examination she testified that defendant told her only that the operation was a two-stage procedure. Defendant told her that her body might reject the implants in the breasts and, if so, they would have to come out. She admitted that she signed a form consenting to an operation for "subcutaneous mastectomy and excision of excess abdominal skin." The consent form also states:

"I understand the nature and purpose of the operation, possible alternative method of treatment and risk involved and possibility of complications have been explained to me."

She also admitted that following the operation her husband was anxious to see the results and loosened the bandage.

On redirect she testified that she was in the hospital when she signed the consent form and did not read it. The form was brought to her by a

nurse the day before the operation. She also signed a consent to the second stage of the operation, but "was on pain killers at that time."

*For the defendant*
### Dr. Gerald George Hoffman
He is a pathologist. On July 31, 1973, he examined tissue specimens of the breasts of the plaintiff and found evidence of fibrosistic disease, fibrous mastitis and sclerosing adenosis of each breast. He believed such factors indicate a risk of developing cancer.

### Dr. Morrison D. Beers, on his own behalf
When he originally examined plaintiff he found that her breasts were sagging with a two-inch overhang. The nipple and areola areas also sagged. Her tissue was very lax and two-thirds of the glandular tissue of the right upper breast was missing. He explained to her the nature and technique of the operation he contemplated performing, explaining that an incision would be made around the nipple area and that excess skin and diseased tissue would be removed. He further explained there would be a loss of blood, loss of nipple sensation and a possibility of infection. He also warned her of the possibility of scars, especially for a person with lax and soft skin.

### Dr. Martin Russell Sullivan
He is a plastic and reconstructive surgeon. In his expert opinion defendant was correct in performing the surgery upon plaintiff based upon her medical history.

On cross-examination he stated that the state of the art in 1973 was such that the operation left "a great deal to be desired" and that the patient should have been so cautioned.

OPINION
Plaintiff first contends that the trial court erred in refusing to direct the verdict in her favor. In *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513, 514, our supreme court established the standard to be applied in determining whether to direct a verdict. There the court stated:

> "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

■■ A motion for a directed verdict should not be granted where there are factual issues to be determined by the jury. (See *Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320.) The question presented,

therefore, is whether a jury verdict for defendant could be justified under the evidence adduced. (See *Connolly v. Melroy* (1978), 63 Ill. App. 3d 850, 380 N.E.2d 863.) Defendant admits that he had a duty to warn plaintiff of potential risks. The record however presents conflicting evidence as to whether defendant informed plaintiff of the possible dangers related to the proposed surgery. Defendant clearly testified that he did warn plaintiff that "adverse results" might follow the surgery. He testified that he told her there might be "wrinkling" and "looseness" of the skin. Plaintiff, however, positively denied that defendant gave her any warning. Rather, she testified that he promised a "perfect" result. Given such a conflict in the evidence a directed verdict in favor of either party would clearly have been improper. The evidence in favor of plaintiff was certainly insufficient to meet *Pedrick* standard since a verdict in defendant's favor could be supported by the evidence. Accordingly, the trial court properly submitted this matter to the jury for determination.

Plaintiff next contends that the trial court erred in denying her motion for a new trial. She argues that the jury verdict in favor of defendant was against the manifest weight of the evidence.

■ It is clear that a jury verdict should be set aside and a new trial ordered only where the verdict is against the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) Manifest weight has been defined as that weight which is "clearly evident, plain and indisputable." (*Haas v. Woodward* (1965), 61 Ill. App. 2d 378, 384, 209 N.E.2d 864, 867.) A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon the evidence. (*Wilson v. Don LaCost, Inc.* (1974), 20 Ill. App. 3d 624, 314 N.E.2d 27.) In determining the necessity of a new trial, neither the trial court nor the reviewing court "should sit as a second jury to consider the nuances of the evidence or the demeanor and credibility of the witnesses." *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 271, 362 N.E.2d 446, 454.

■ As we have previously stated, the evidence in this case was conflicting. Defendant testified that he did discuss the potential problems of the proposed surgery with plaintiff and that he informed her of the possible dangers. She, however, testified that defendant did not inform her of the risks involved in the breast surgery. The verdict necessarily depended upon which of the parties the jury believed. Obviously the jury accepted the testimony of defendant and rejected that of plaintiff. The credibility of witnesses and the weight to be given their testimony are matters for the jury to resolve. (*Georgouses v. Demos* (1977), 51 Ill. App. 3d 134, 366 N.E.2d 467.) The testimony of defendant was certainly not

unbelievable or improbable. Accordingly, the jury verdict was supported by the evidence and a new trial would have been unwarranted.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P. J., and WILSON, J., concur.