THOMAS NETZEL, Plaintiff-Appellant, v. UNITED PARCEL SERVICE, INC., Defendant-Appellee.

First District (3rd Division)   No. 1—85—1606

Opinion filed March 29, 1989.

Marvin A. Brustin, Ltd., of Chicago, for appellant.

Keck, Mahin & Cate, of Chicago, for appellee.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Plaintiff, Thomas Netzel, appeals from the trial court's grant of a new trial on both liability and damages in his suit for retaliatory discharge against defendant, United Parcel Service, Inc. (UPS). At trial, a jury found in plaintiff's favor and awarded him $200,000 in compensatory damages.

This court's prior opinion (*Netzel v. United Parcel Service, Inc.* (1987), 165 Ill. App. 3d 685, 520 N.E.2d 665), finding that plaintiff's claim for retaliatory discharge had been preempted by section 301 of the Labor Management Relations Act (29 U.S.C. §185(a) (1976)), was reversed by the supreme court in a supervisory order based on, *inter alia, Lingle v. Norge Division of Magic Chef, Inc.* (1988), 486 U.S. ____, 100 L. Ed. 2d 410, 108 S. Ct. 1877, and *Gonzalez v. Prestress Engineering Corp.* (1986), 115 Ill. 2d 1, 503 N.E.2d 308, *cert. denied* (1987), 483 U.S. 1032, 97 L. Ed. 2d 779, 107 S. Ct. 3248.

Plaintiff injured his knee while working as a package car driver for UPS on June 7, 1977. Plaintiff was off the job for extended periods in between which he unsuccessfully attempted to return to work. Plaintiff filed a claim under the Workmen's Compensation Act (the Act) (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) on July 12, 1978. On June 7, 1977, and three subsequent occasions on which he attempted to return to work, including August 7, 1979, the date of his discharge, plaintiff could not continue his route of package deliveries and pick-ups due to pain and swelling in his knee. On June 7, 1977, and the two occasions prior to his discharge when he could not continue working, a supervisor granted plaintiff permission to return to the UPS distribution center with undelivered packages or "NDA's" (no delivery attempted). Plaintiff maintained at trial that he was also given permission to return to the distribution center on August 7, 1979. Defendant maintained that plaintiff was ordered to remain on his route until a supervisor went out to assist him in completing his route.

After his discharge, plaintiff sued, alleging he was discharged in violation of section 4(h) of the Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.4(h)) for filing a claim thereunder. After the jury verdict for plaintiff, UPS filed a post-trial motion. UPS requested either a directed verdict at the close of plaintiff's case in chief, judgment notwithstanding the verdict, a new trial or a remittitur.

The trial court denied UPS' motion for a judgment *n.o.v.* It did not rule on the motion for a directed verdict or remittitur. The trial court granted UPS a new trial on both liability and damages. The court found that there was no evidence linking plaintiff's discharge "with his having filed a [w]orkmen's [c]ompensation [c]laim more than one year prior to his discharge." The court also found that the damage award could not stand because of plaintiff's testimony that he could not perform the work required of a UPS driver after his injury and because the jury did not give him "credit for some of the benefits he received." By this last remark, the trial court was apparently re-

ferring to disability payments plaintiff received after his discharge.

■ Before addressing the merits of plaintiff's appeal, we must address UPS' claim that we should apply to his case the standards applied by Federal courts to employment discrimination cases brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.* (1976)). Therein, a plaintiff must make out a *prima facie* case which a defendant must rebut by adducing some evidence of lawful motivation for the challenged action. If the defendant does so, the plaintiff must then prove that the defendant's reason for the challenged action is pretextual. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817.

■ ■ No Illinois court has applied the standards under the Civil Rights Act of 1964 to claims of retaliatory discharge brought under Illinois law. We therefore decline to do so here. We believe that such cases should be reviewed under a traditional tort analysis. The cases most like retaliatory discharge cases involve claims of breach of employment contracts by wrongful discharge. Therein, the employer must show that the plaintiff was guilty of conduct justifying his discharge. (*Lukasik v. Riddell, Inc.* (1983), 116 Ill. App. 3d 339, 346, 452 N.E.2d 55; *Foster v. Springfield Clinic* (1980), 88 Ill. App. 3d 459, 464, 410 N.E.2d 604.) Whether the plaintiff disobeyed reasonable orders and was thus terminated for good cause is a question for the trier of fact. (*Lukasik,* 116 Ill. App. 3d 339, 452 N.E.2d 55; *Foster,* 88 Ill. App. 3d 459, 410 N.E.2d 604.) These are proper considerations for a jury evaluating a claim of retaliatory discharge. However, a plaintiff must still convince the trier of fact only by a preponderance of the evidence that he was discharged for exercising his rights under the Workmen's Compensation Act.

On appeal, plaintiff first contends the trial court abused its discretion in ordering a new trial because the jury's verdict was not against the manifest weight of the evidence.

■ ■ A motion for new trial is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent a clear abuse of discretion. (*Cadral Corp. v. Solomon, Cordwell, Buenz & Associates, Inc.* (1986), 147 Ill. App. 3d 466, 497 N.E.2d 1285.) The standard to be applied in deciding a motion for new trial is whether the jury's verdict was against the manifest weight of the evidence. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or the jury's findings are unreasonable, arbitrary and not based upon the evidence. (*Anderson v. Beers* (1979), 74 Ill. App. 3d 619, 623, 393 N.E.2d 552.) In determining the propri-

ety of a new trial, neither a trial nor reviewing court "should sit as a second jury to consider the nuances of the evidence or the demeanor and credibility of the witnesses." *Kitsch v. Goode* (1977), 48 Ill. App. 3d 260, 271, 362 N.E.2d 446.

Applying these principles here, we conclude that the jury drew reasonable inferences from the conflicting evidence before it. As such, the trial court erred in granting UPS a new trial.

■ ■ Preliminarily, we conclude that the trial court erred in granting UPS a new trial based on its finding that there was no evidence linking plaintiff's discharge to his filing a workmen's compensation claim more than a year before he was fired. Specifically, we believe the trial court erred in focusing on the filing of the claim as the action in retaliation against which plaintiff was discharged. Section 4(h) of the Act makes it illegal for employers to discharge an employee "because of the exercise of his rights or remedies granted" by the Act. (Ill. Rev. Stat. 1977, ch. 48, par. 138.4(h).) The rights plaintiff asserts in his brief, *viz.*, to stop working and to seek medical attention for his injuries, are not specifically enumerated in the Act. Plaintiff's right to receive benefits thereunder for as long as he was unable to work nonetheless deserves protection under the statute. As such, the passage of time from the date of filing a claim for adjustment under the Act to the date of discharge of an employee-claimant cannot be allowed to insulate an employer from liability for retaliatory discharge. Rather, where an employee can prove that the employer's motive was retaliation for the exercise of his rights under the Act, despite the passage of time, he is entitled to a recovery. For that reason, UPS' reliance on the passage of time as negating any retaliatory motive is similarly without merit.

The evidence adduced at trial satisfied plaintiff's burden. Under the circumstantial evidence adduced, it was within the bounds of reason for the jury to infer a retaliatory motive for plaintiff's discharge.

Plaintiff testified that UPS summoned him to a safety meeting in April 1979. According to plaintiff, when Wayne Bigonin, the UPS distribution center manager who later fired him, saw him in a cast he told plaintiff that it was a bunch of "crap" and "bullshit" and that he should have returned to work long before then.

The fact that the UPS officer who fired plaintiff had earlier accused him of feigning injury and malingering must have had a significant impact upon the jury. We disagree with UPS that it merely showed, at worst, that Bigonin's motive for discharging plaintiff was his belief that plaintiff was feigning injury, not retaliation for the exercise of his rights under the Act. This evidence could be reasonably

interpreted as revealing Bigonin's displeasure with plaintiff's prolonged exercise of his statutory rights rather than an actual belief that plaintiff was feigning injury.

Plaintiff also testified that he had been permitted to return to the distribution center with NDA's when he was first injured and on the two subsequent occasions when he had unsuccessfully attempted to return to work.

This testimony could have been reasonably interpreted by the jury as evidence either that plaintiff was given permission to return to the distribution center with NDA's on August 7, 1979, or that his return with such packages was not the real reason for his discharge, contrary to UPS' position at trial. We disagree with UPS that this testimony was subject *only* to the interpretation proffered by it. UPS asserts that the fact that plaintiff returned with NDA's on two occasions after he filed his workmen's compensation claim and the fact that Bigonin was the distribution center manager on one of those occasions negate a retaliatory motive for his discharge. UPS reasons that the difference between plaintiff's return to the distribution center on those two occasions and on August 7, 1979, was that Bigonin believed that the latter was contrary to a supervisor's instruction.

This testimony was susceptible to the interpretation proffered by either party. It tended to support each party's case only to the extent that the jury accepted their theory of the case. As it showed that plaintiff had twice been permitted to return with NDA's, it made more likely true that plaintiff was permitted to return with NDA's on August 7, 1979. As it showed that plaintiff sought and obtained permission to return with NDA's before doing so, it made more likely true that UPS discharged plaintiff for returning on August 7, 1979, without such permission. Either inference would have been reasonable, and we cannot say, assuming the jury drew the former inference, that its conclusion was against the manifest weight of the evidence.

■ UPS asserts that its articulation of a nondiscriminatory reason for plaintiff's discharge negates a retaliatory motive therefor. The short answer to this argument is that the character of its reason for discharging plaintiff, whether innocent or culpable, was the ultimate fact question before the jury. By itself, the articulation of an innocent reason for plaintiff's discharge proves nothing.

UPS also cites certain evidence as indicating Bigonin's reasonable belief that plaintiff had returned to the distribution center in violation of UPS rules and the express instruction of a supervisor, Steve Qualkenbush. Qualkenbush testified that, on August 7, 1979, he in-

structed plaintiff to stay on his route until he went out to meet plaintiff when plaintiff called to inform the center that he could not continue his route because of pain and swelling in his knee. Qualkenbush also testified that he told Bigonin what he had instructed plaintiff to do. Bigonin testified that Qualkenbush was changing into his driver's uniform when plaintiff returned to the center. Finally, Bruce DeFranceschi, plaintiff's immediate supervisor on August 7, 1979, testified that he was surprised to see that plaintiff had returned to the center on that date and that no one had told him that plaintiff was returning.

UPS ignores that the value of this testimony to it depended upon the credibility of the witnesses, especially Bigonin and Qualkenbush, as determined solely by the jury. We cannot say that the jury's rejection of UPS' theory was contrary to the manifest weight of the evidence.

DeFranceschi also testified that in order to terminate a UPS package car driver "you [had] to have a lot of write-ups" on him, *i.e.*, written reprimands for infractions such as returning with NDA's. UPS argues that this testimony was unreliable. It notes DeFranceschi's testimony that he became a UPS supervisor shortly before August 7, 1979, that he resigned by mutual agreement in 1980 and that he had authority only to "write-up," not discharge, employees. DeFranceschi also testified that he did not know of any driver who had been fired for returning with NDA's. UPS also discounts this testimony. It notes DeFranceschi's testimony that he did not know of any driver who returned with NDA's without permission, as plaintiff allegedly did. UPS also contrasts DeFranceschi's testimony with that of Bigonin, an 18-year UPS employee with seven years' experience as a distribution center manager, that insubordination is grounds for immediate dismissal. Finally, UPS cites plaintiff's failure to file a union grievance as evidence of his own belief that his discharge was not improper.

■■ Other than noting that Bigonin could not recall where he had read the rule regarding insubordination, we will not explore the factors which may have made these witnesses more or less credible in the eyes of the jury regarding UPS' discharge policies. It suffices to note that the credibility of the witnesses and the weight to be given their testimony is uniquely the province of the jury. (*Mizowek v. De Franco* (1976), 64 Ill. 2d 303, 356 N.E.2d 32.) The jury might reasonably have given DeFranceschi's testimony more weight than Bigonin's. It might also have reasonably concluded that plaintiff's failure to file a union grievance did not reveal the absence of a retaliatory motive

on UPS' part. Given the conflicting and circumstantial nature of the evidence in this case, we cannot say that, to the extent that it may have been based on such determinations, the jury's verdict was against the manifest weight of the evidence.

UPS asserts that certain elements in its case, or lacking in plaintiff's case, made the former much stronger than the latter. We disagree. Admittedly, evidence that other UPS employees had not been fired for returning with NDA's would have strengthened plaintiff's case. However, such evidence would have been but one more piece of circumstantial evidence for the jury's consideration. Its absence was not fatal to plaintiff's case. The same conclusion obtains as to the lack of proof that Bigonin or any other UPS officer had disparaged employees exercising their statutory rights. As to these and the remaining elements cited by defendant, which we see no need to discuss individually, it suffices to note that the weight and sufficiency of the evidence was for the jury to decide.

In the final analysis, this case is governed by the principle that a trial court abuses its discretion in granting a new trial only because it would have decided the case differently had it been the trier of fact or because it believes that the inferences which it has drawn are more reasonable than those drawn by the jury. (*Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 401 N.E.2d 1145.) The jury's verdict as to UPS' liability for discharging plaintiff in retaliation for exercising his statutory rights was not against the manifest weight of the evidence. As such, UPS was not entitled to a new trial on that issue.

UPS also contends that certain errors by the trial court regarding the jury instructions also required a new trial on the liability issue. UPS raises as error the trial court's refusal to instruct the jury: (1) that plaintiff had to prove that he would not have been discharged "but for" the exercise of his statutory rights; (2) not to consider whether UPS had a "sufficient reason" for discharging plaintiff; (3) not to consider whether plaintiff's discharge was in conformance with the collective bargaining agreement between UPS and its employees' union; and (4) that the burden of proving plaintiff's claim remained with him at all times. UPS raises as further error, alone warranting a new trial, the jury instruction that Bigonin was the agent of UPS and, therefore, any act or omission of his was that of UPS. Specifically, UPS asserts that the instruction took away the jury's right to determine that Bigonin's discharge of plaintiff was a frolic for which it could not be vicariously liable. UPS asserts that the jury could have so concluded from the testimony of Les Dahlgren, a UPS safety rep-

resentative, that it was against company policy to discharge employees for exercising their workmen's compensation rights.

■■■ We find no error with respect to the jury instructions and believe that those given properly charged the jury. UPS' proffered instructions were based on Federal case law which we have already concluded is inapplicable here. Moreover, given the lack of any allegation or evidence by UPS that Bigonin exceeded his general authority to discharge employees in discharging plaintiff, there was no error in the instruction regarding UPS' liability under agency principles for his conduct. (See *Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825, 383 N.E.2d 1242.) In this regard, the mere fact that plaintiff's discharge was in violation of a UPS policy was insufficient to insulate it from liability. The authority relevant to the imputation of vicarious liability to UPS for Bigonin's conduct was the general authority to discharge employees, which UPS admits he had. It was not the authority to discharge employees for exercising their statutory rights, which no UPS supervisor could have under Illinois law, regardless of any UPS policy on that subject.

■■■ UPS also asserts that it was entitled to a directed verdict at the close of plaintiff's case or a judgment *n.o.v.* Such relief may be granted only when all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based thereon could ever stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Our determination that the jury verdict for plaintiff on the issue of liability was not against the manifest weight of the evidence necessarily disposes of this argument.

Plaintiff next contends that the trial court also abused its discretion in granting UPS a new trial on the issue of damages. He asserts that the jury was presented with sufficient evidence from which it could reasonably determine his damages from lost earnings and benefits.

■■■ ■■ The amount of damages awarded generally is within the discretion of the jury. (*Hollis v. R. Latoria Construction, Inc.* (1985), 108 Ill. 2d 401, 407, 485 N.E.2d 4.) Nevertheless, a reviewing court can order a new trial if the damages are manifestly inadequate, if proved elements of damages have been ignored, or if the award does not bear a reasonable relation to the plaintiff's loss. (*Hollis*, 108 Ill. 2d 401, 485 N.E.2d 4; *Kern v. Uregas Service of West Frankfort, Inc.* (1980), 90 Ill. App. 3d 182, 412 N.E.2d 1037.) Under the latter rule, we conclude the trial court did not abuse its discretion in granting a new trial on damages.

The damages instruction, submitted by plaintiff, instructed the jury to reasonably and fairly compensate him for the value of earnings and benefits lost if it found for plaintiff on the issue of liability.

Plaintiff testified that he was unable to obtain employment after his discharge at as high a rate as UPS paid. He provided information regarding his earnings which the jury could utilize in calculating damages. In closing arguments, plaintiff's counsel requested $54,800 for lost wages and he suggested that a fair figure for the benefits lost such as medical, dental, pension, and overtime would be $45,000. He also requested $150,000 for "loss of job."

■■■ The jury's compensatory damages award in this case does not bear a reasonable relation to the loss suffered by plaintiff. (*Hollis*, 108 Ill. 2d 401, 485 N.E.2d 4; *Kern*, 90 Ill. App. 3d 182, 412 N.E.2d 1037.) Although there was testimony that plaintiff lost certain benefits due to his discharge, we cannot find sufficient evidence upon which the jury could reasonably and fairly compensate plaintiff for the value of those benefits. Moreover, the instruction did not allow the jury to award damages for the highly speculative element of "loss of job" mentioned by plaintiff's counsel. The purpose of compensatory damages is to make the injured party whole, not to punish the defendant or bestow a windfall upon the plaintiff. *Peterson v. Lou Bachrodt Chevrolet Co.* (1979), 76 Ill. 2d 353, 363, 392 N.E.2d 1.

We are unable to determine the basis of the jury's damages award in this case. The verdict does not reflect the evidence at trial and we cannot say, for example, whether the jury improperly included the "loss of job" element in the award or misunderstood the instruction and included punitive damages in the award. Therefore, the trial court correctly granted a new trial on damages.

■■■ Finally, as we affirm the grant of a new trial on the issue of damages, we need not address UPS' contention that it is entitled to a remittitur on the damage award.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, reversed in part and remanded for a new trial in accordance herewith.

Affirmed in part; reversed in part and remanded.

McNAMARA and WHITE, JJ., concur.