THALIA PECARO, Plaintiff-Appellant, v. BRIAN BAER, Defendant-Appellee.

First District (5th Division)   No. 1—09—2973

Opinion filed December 23, 2010.—Rehearing denied February 7, 2011.

Steven J. Morton and Matthew E. Luecke, both of Steven J. Morton & Associates, Ltd., of Chicago, for appellant.

Mark D. Sheaffer, of Garretson Santora Urgo & Nugent, Ltd., of Chicago, for appellee.

JUSTICE HOWSE delivered the opinion of the court:

Plaintiff, Thalia Pecaro, filed a complaint in the circuit court of Cook County claiming damages for personal injuries that occurred when an automobile she was driving was struck in the rear by an automobile driven by the defendant, Brian Baer. The defendant admitted negligence. After a trial on damages, a jury returned a verdict in favor of the defendant. Pecaro appeals from an order of the circuit court denying her motion for a judgement notwithstanding the verdict or, in the alternative, a new trial on the issue of damages only. For the reasons that follow, we affirm the decision of the circuit court.

## BACKGROUND

At trial, Pecaro testified she was driving on November 17, 2006, southbound on Cicero Avenue near the intersection at 159th Street when she came to a stop at a traffic light. Pecaro had a passenger in the automobile with her, Steven Tepper, an acquaintance she has known for years. At that time, Pecaro worked as an automobile salesperson and was driving Tepper to an auto mall in Matteson, Illinois, so he could purchase an automobile. While Pecaro was stopped at the light, Tepper noticed that a vehicle behind them did not appear to be stopping. Tepper shouted to plaintiff, "I don't think this guy is going to stop." An automobile driven by defendant Baer struck the rear of Pecaro's vehicle.

Pecaro testified that she looked in her rearview mirror and observed the automobile an instant before she felt two impacts. The plaintiff and Tepper described the first impact as heavy and the second impact as medium. However, Baer testified there was only one impact and the force of the impact was light. Pecaro had her foot on the brake and her vehicle did not hit the vehicle in front of her. Pecaro braced herself before the impact but she testified her knee hit underneath the steering wheel.

Pecaro felt pain in her right knee immediately after the accident. Pecaro testified that she did not have pain in her knee prior to the accident. She had pain in her shoulders when she went to sleep that night. The next morning she continued to have the knee and shoulder pain along with new symptoms of pain in her upper and lower back. She then went to a hospital emergency room where she received X rays on her back and right knee and had her knee wrapped. She was released from the hospital after three or four hours.

The next week she was examined by orthopedic surgeon Dr. Ignas Labanauskas and reported pain in her back and right knee. Pecaro then had an MRI that showed a small disk protrusion with minimal stenosis in her back and minimal joint effusion in her right knee.

Pecaro was examined by Dr. Labanauskas again on December 6, 2006, and he prescribed physical therapy. Pecaro began taking physical therapy.

Pecaro was next examined by Dr. Labanauskas in February of 2006 and again complained of back pain. Her knee pain had subsided but she claimed the knee made a clicking sound when she walked up stairs.

Pecaro was next examined by Dr. Labanauskas shortly before trial on May 27, 2009, claiming she felt numbness in her right leg and "a jolt of pain." Pecaro took an MRI on her lower back that showed she had left-sided sciatica, which is an inflammation of the sciatic nerve. Dr. Labanauskas examined her on June 3 and told her she needed to concentrate more on exercises.

Pecaro testified that she missed three to four weeks of work. When she returned to work, she needed coworkers to help her with her duties. Pecaro currently has a new job marketing copier equipment and complains of pain if she sits too long. She testified that pain comes and goes in her back. While she no longer experiences pain in her right knee, she described that she has "a little squishy ball that moves around [her] whole kneecap."

Pecaro testified that since the accident she has difficulty doing certain things she enjoyed prior, such as gardening, bowling, washing the floor on her hands and knees, mowing the lawn, shoveling snow, dancing, sitting at a movie theater, exercising, playing with her daughter, and going on amusement park rides.

On cross-examination, Pecaro testified that automobile salespersons at the dealership where she was formerly employed are required to shovel snow off the vehicles in the winter. Pecaro testified that after the accident she was unable to shovel snow at the dealership.

When asked about a notation from Dr. Labanauskas concerning an exacerbation of her lower back pain after shoveling snow at work, Pecaro testified that she did not shovel snow at work.

Dr. Labanauskas testified in an evidence deposition that during an examination of Pecaro on February 14, 2007, she reported back pain after shoveling snow at work. Dr. Labanauskas testified that this activity may have aggravated some of her symptoms.

Dr. Labanauskas testified his first examination of Pecaro occurred on November 22, 2006. She reported that she had no prior knee problems. As a result, Dr. Labanauskas opined, to a reasonable degree of medical certainty, that the accident caused her knee pain. Dr. Labanauskas also diagnosed Pecaro as having a slipped disk in her back.

On December 6, 2006, Dr. Labanauskas prescribed physical therapy to treat Pecaro's injuries and placed restrictions on her return

to work, primarily so she would avoid pressure on her back, such as excessive sitting, walking, and standing.

Dr. Labanauskas next examined Pecaro on February 14, 2007. She was still having some symptoms, but improving, and he discharged her from his care. She returned to see him nearly two years later on May 27, 2009, and an examination revealed "a little loose body floating in her knee."

Dr. Labanauskas testified:

"[I]t's even about the size of a piece of rice, that was floating around as a loose body in her patella, which is a normal structure on the front of the knee."

The "rice" body may arise from trauma and is more of a nuisance that can be removed through surgery. Pecaro reported new complaints with her back. Dr. Labanauskas next examined Pecaro on June 3, 2009. Dr. Labanauskas testified that he believes some of Pecaro's disk pathology, as found on her MRI, preexisted the accident.

On cross-examination, Dr. Labanauskas testified that Pecaro did not have any swelling in her right knee on her first visit with him. Dr. Labanauskas could not opine that the minimal joint effusion, the disk protrusion or the stenosis, found on the first MRI, was caused by the accident.

The jury returned a verdict for defendant. Pecaro's motion for judgment *n.o.v.* or a new trial was denied. This appeal followed.

## ANALYSIS

Judgments notwithstanding the verdict should be entered only in those cases in which all the evidence, when viewed in the aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on the evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 509-10, 229 N.E.2d 504, 513-14 (1967); *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill. App. 3d 30, 38, 684 N.E.2d 935, 941 (1997). Here, the evidence viewed in its aspect most favorable to the defendant does not favor the plaintiff such that it could be said that no contrary verdict could ever stand.

Plaintiff apparently concedes this case is not appropriate for judgment *n.o.v.* since her argument on this point consists only of a statement that she moved for judgment *n.o.v.*, that the trial court denied the motion, and that she "suggests" that the evidence before the court mandates this relief.

In considering plaintiff's posttrial motion for a new trial, our standard of review is abuse of discretion. Plaintiff's motion for a new trial is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent a clear abuse of discretion. *Netzel*

*v. United Parcel Service, Inc.*, 181 Ill. App. 3d 808, 812, 537 N.E.2d 1348, 1350 (1989). In rendering our decision, this court must first determine whether the jury's verdict was against the manifest weight of the evidence. *Mizowek v. De Franco*, 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36 (1976). A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or the jury's findings are unreasonable, arbitrary, and not based upon the evidence. *Anderson v. Beers*, 74 Ill. App. 3d 619, 623, 393 N.E.2d 552, 555 (1979).

> "In determining the propriety of a new trial, neither a trial nor a reviewing court 'should sit as second jury to consider the nuances of the evidence or the demeanor and credibility of the witnesses.' " *Netzel*, 181 Ill. App. 3d at 812-13, 537 N.E.2d at 1350, quoting *Kitsch v. Goode*, 48 Ill. App. 3d 260, 271, 362 N.E.2d 446, 454 (1977).

Unquestionably, it is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses and to decide what weight should be given to the witnesses' testimony. *Maple v. Gustafson*, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 511-12 (1992).

Plaintiff argues the court erred when it failed to grant her motion for new trial and that this case is like *Giardino v. Fierke*, 160 Ill. App. 3d 648, 513 N.E.2d 1168 (1987). In *Fierke*, the plaintiff and her husband were injured after they were both struck as pedestrians by an automobile driven by defendant. *Fierke*, 160 Ill. App. 3d at 650, 513 N.E.2d at 1169. The Second District found the jury award of $4,200 in damages inadequate because the evidence showed plaintiff spent nine days in the hospital and endured pain and suffering, including permanent hearing loss and postural vertigo. There was objective medical testimony that substantiated the injuries. *Fierke*, 160 Ill. App. 3d at 651-52, 513 N.E.2d at 1170.

Here, unlike *Fierke*, Pecaro merely visited an emergency room of a hospital the next morning after the accident with subjective complaints. Pecaro did not present medical evidence that she suffered any permanent injuries, like the plaintiff in *Fierke*. Pecaro's medical doctor found preexisting injuries and there was no medical testimony that the preexisting injuries were aggravated by the auto accident. Also, the jury did not award Pecaro any damages, unlike *Fierke*, where the jury found the plaintiff's testimony credible and awarded damages, though inadequate. Here, there were credibility issues. Plaintiff's own medical witness testified that Pecaro told him she reported back pain after shoveling snow, which Pecaro denied. Pecaro's physician testified that the shoveling of the snow may have aggravated some of her symptoms.

The jury weighed the conflicting testimony on the impact and determined the credibility of the witnesses. The only evidence of injury was Pecaro's subjective testimony. Dr. Labanauskas testified that dur-

ing his first examination he observed that Pecaro's knee was not swollen and found no objective injuries. His review of the emergency room X rays revealed "mild degenerative changes, no evidence of acute fracture." Dr. Labanauskas testified that these degenerative changes could have occurred prior to the accident.

Based on the record before us, we cannot say this case is like *Fierke*.

Pecaro next presents several additional cases in her appellate brief in support of her contention that she should receive a new trial. See *McKenzie v. Romeiser*, 205 Ill. App. 3d 830, 563 N.E.2d 837 (1990); *Faleti v. Tracy*, 233 Ill. App. 3d 1025, 600 N.E.2d 39 (1992); *Vacala v. Village of La Grange Park*, 260 Ill. App. 3d 599, 636 N.E.2d 812 (1994); *Hollis v. R. Latoria Construction, Inc.*, 108 Ill. 2d 401, 485 N.E.2d 4 (1985). However, those cases are readily distinguishable because the overarching issue was the adequacy of the damages awards, while here, the jury did not award any damages at all.

Moreover, many of those cases focus on the elements of negligence, *i.e.*, whether the defendants owed a duty to the plaintiffs, whether the defendants breached that duty and whether the breach was the proximate cause of the plaintiffs' injuries (*Ahmed v. Pickwick Place Owners' Ass'n*, 385 Ill. App. 3d 874, 882, 896 N.E.2d 854, 863 (2008)). In the instant case, the defendant admitted he was negligent in striking Pecaro's vehicle, leaving only injury and proximate cause for a jury determination. The jury apparently did not believe that defendant's negligence was the proximate cause of any of her injuries.

In the cases cited by the plaintiff, there was no question that those plaintiffs actually suffered injuries. In *Romeiser*, a medical malpractice case, the plaintiff developed serious complications just five hours after surgery and additional serious complications continued to develop for the next five weeks. *Romeiser*, 205 Ill. App. 3d at 832, 563 N.E.2d at 839. In *Vacala*, an automobile accident, emergency personnel testified that plaintiff was screaming in pain and they observed a deformity in her thigh that indicated a broken femur at the accident scene. *Vacala*, 260 Ill. App. 3d at 604-05, 636 N.E.2d at 816. In *Hollis*, the plaintiff, a roofer, fell through a skylight and landed on a hard-packed dirt floor 18 feet below. X rays revealed the plaintiff suffered fractures of the left elbow, right wrist and left knee requiring surgery, then casts on both arms and his left leg after surgery. *Hollis*, 108 Ill. 2d at 404-05, 485 N.E.2d at 5-6. While in *Faleti*, an automobile accident, there was a question of whether the plaintiff's four-day stay in the hospital after the accident was necessary. *Faleti*, 233 Ill. App. 3d at 1026, 600 N.E.2d at 40-42.

Here, the evidence presented at trial includes Pecaro's testimony that she struck her right knee on the steering wheel during the accident and that she had no prior knee pain. There is a dispute as to whether there were one or two impacts and whether the force of the impact was heavy or light.

Pecaro testified that she did not feel back pain or seek medical attention until the next day. She testified that she continued to experience back pain from the date of the accident up until the date of trial, a period of more than two years. She also testified that after being released from her doctor's care, she did not seek treatment for her back pain for nearly two years until seeking an examination shortly before trial.

Dr. Labanauskas testified that he could not opine that the minimal joint effusion, the disk protrusion or the stenosis, found on the first MRI, were caused by the accident. In other words, her own medical witness did not corroborate that her injuries were caused by the accident.

Further, the jury is in a superior position than a reviewing court because it has the ability to observe the witnesses while testifying, to judge their credibility, and to determine the weight their testimony should receive. *Bazydlo v. Volant*, 164 Ill. 2d 207, 214-15, 647 N.E.2d 273, 276-77 (1995). As a result, we cannot say the cases cited by plaintiff or the evidence presented at trial support Pecaro's claim that the jury findings are unreasonable, arbitrary, and not based upon the evidence.

Next, Pecaro claims the trial court mistakenly relied on *Moran v. Erickson*, 297 Ill. App. 3d 342, 696 N.E.2d 780 (1998), in denying her motion for judgment *n.o.v.* or new trial.

In *Moran*, we stated:

> "[T]he medical professional's determination of the patient's credibility and acceptance of the patient's history and subjective expressions of pain, for purposes of making a medical diagnosis and rendering medical treatment, is not binding on the jury. The jury, which is empowered to make credibility determinations [citation], must make its own assessment of the patient's veracity, not merely with respect to that person's in-court testimony but also with respect to that person's general credibility to the extent that person's credibility is relevant to the ultimate determination in the case." *Moran*, 297 Ill. App. 3d at 354, 696 N.E.2d at 788, citing *Netzel*, 181 Ill. App. 3d 808, 537 N.E.2d 1348, *Melecosky v. McCarthy Brothers Co.*, 115 Ill. 2d 209, 216-17, 503 N.E.2d 355, 358 (1986), and *Aguinaga v. City of Chicago*, 243 Ill. App. 3d 552, 562, 611 N.E.2d 1296, 1305 (1993).

While we recognize the factual differences between *Moran* and the instant case, we cannot say the trial court's reliance on *Moran* was an abuse of discretion.

In *Moran*, the plaintiff testified that she was injured when her knees hit the dashboard during an automobile collision. *Moran*, 297 Ill. App. 3d at 345, 696 N.E.2d at 782. She was taken by ambulance to a hospital where X rays did not disclose any fractures or "hard tissue injuries." However, the plaintiff testified that she awoke the next day in extreme pain from "head to toe." *Moran*, 297 Ill. App. 3d at 345, 696 N.E.2d at 782. From December 1, 1989, through July 1996, she was examined by a series of doctors, underwent arthroscopic surgery on her left knee, and participated in continual physical therapy. *Moran*, 297 Ill. App. 3d at 345, 696 N.E.2d at 782.

A great deal of evidence in *Moran* questioned the veracity of plaintiff's statements concerning continual knee pain. For example, on cross-examination, the plaintiff testified that she was not examined by medical professionals between December 1, 1989, and February 4, 1990, while she vacationed at Disney World and in Galena, Illinois. The Disney trip began two days after the accident and she testified that she may have ridden horses in Galena. *Moran*, 297 Ill. App. 3d at 346, 696 N.E.2d at 783. She also denied telling her physical therapist that she played five games of tennis on June 10, 1990, and several more on July 1, 1990, and insisted she had not played a full game of tennis since the accident.

Further, *Moran*'s surgeon, who performed her arthroscopic surgery, testified that crutches are normally used for two to three weeks after the surgery. Moran was still using crutches for three years after the surgery. *Moran*, 297 Ill. App. 3d at 349, 696 N.E.2d at 785. Also, Moran was examined by a clinical psychologist in 1994 who testified that plaintiff has psychological problems and could attempt to control others or gain attention by complaining of physical symptoms that may not exist.

The evidence in the instant case, while not as extensive as in *Moran*, nevertheless provides ample reason for the jury to question Pecaro's injury. Pecaro and witness Tepper testified that they felt two impacts. Plaintiff and Tepper both testified that the first impact was heavy and the second medium, while the defendant testified there was a single, light impact.

It was unexplained how two impacts could have occurred in this rear-end accident where plaintiff's automobile was not pushed into another vehicle or object. There is no evidence that plaintiff's automobile struck any object after the collision with defendant's vehicle.

Further, Pecaro's testimony that she did not strain her back while shoveling snow at work is contradicted by Dr. Labanauskas' testimony that during his February 2007 examination of Pecaro she reported she strained her back while shoveling snow at work.

Pecaro testified to a long list of activities she was no longer able to engage in since the accident. Despite her claimed impairment, the jury heard evidence that Pecaro did not return to visit a doctor until shortly before trial, nearly two years after her last examination.

The issue of whether the accident was the proximate cause of Pecaro's injuries or whether or not she suffered any injuries is an assessment for the jury. We cannot say the jury "arbitrarily or capriciously rejected unimpeached testimony," as Pecaro contends. Based on the evidence, the jury's verdict was not unreasonable.

Plaintiff next argues that the jury ignored proven elements of damages when it returned a verdict in favor of the defendant. In support of her argument, plaintiff cites *Tipsword v. Johnson*, 59 Ill. App. 3d 834, 376 N.E.2d 85 (1978).

In *Tipsword*, a jury awarded plaintiff no damages for medical expenses or claimed injuries arising from an automobile accident in which plaintiff's vehicle was struck in the rear by defendant. The evidence showed the impact of the collision knocked plaintiff's auto off the pavement. *Tipsword*, 59 Ill. App. 3d at 835, 376 N.E.2d at 86. After the impact, plaintiff was trembling and claimed she experienced pain. After talking with police, plaintiff drove her vehicle across a street to a hospital emergency room where she was examined by a medical doctor. Plaintiff claims that she has suffered pain since the accident and will suffer pain and require medical treatment in the future as a result of her injuries.

In reversing the trial court's denial of the motion for new trial, the Fourth District noted that the collision involved: "undeniably, an impact of substantial force." *Tipsword*, 59 Ill. App. 3d at 837, 376 N.E.2d at 87-88.

The court also noted:

> "While the jury may have been justified in finding that the plaintiffs' later claims were exaggerated or overtreated, it would be against the manifest weight of the evidence to determine that there was time to plan a scheme to feign injuries when plaintiffs sought initial medical assistance." *Tipsword*, 59 Ill. App. 3d at 837, 376 N.E.2d at 87-88.

The court concluded that the plaintiff was entitled to at least some damages from her initial treatment.

*Tipsword* is distinguishable from the instant case.

In *Tipsword*, it was undisputed that the force of the impact was substantial enough to push plaintiff's vehicle off the pavement. Here,

the force of the impact was disputed. Plaintiff and her passenger testified to two impacts—a strong impact followed by a medium impact. Defendant, however, testified the impact was light. Unlike *Tipsword*, the impact did not cause Pecaro's vehicle to move.

Also in *Tipsword*, after talking with police, the plaintiff went directly to the hospital emergency room. *Tipsword*, 59 Ill. App. 3d at 835, 376 N.E.2d at 86. The Fourth District noted that there was no time for plaintiff to plan a scheme to feign injuries because the plaintiff sought medical assistance shortly after impact.

Here, unlike *Tipsword*, the plaintiff did not seek medical attention until the next day. We do not suggest that plaintiff's delay in seeking medical attention until the next day is necessarily indicative that her injuries are not real. Plaintiff's expert testified that such a delay by patients is common. However, one of the factors the *Tipsword* court relied upon, the absence of time to feign an injury before seeking medical attention, is not present here.

Thus, based on the record before us, we cannot say an opposing conclusion is clearly evident or that the jury's findings were unreasonable, arbitrary and not based upon the evidence. *Beers*, 74 Ill. App. 3d at 623, 393 N.E.2d at 555.

## CONCLUSION

We affirm the order by the circuit court denying plaintiff's motion for a judgment notwithstanding the verdict or a new trial.

Affirmed.

FITZGERALD SMITH, P.J., and JOSEPH GORDON, J., concur.