BARBARA MIZOWEK, Plaintiff-Appellant, *v.* TONY DE FRANCO, Defendant-Appellee.

(No. 73-323; ▮▮▮▮▮▮▮▮▮▮)

Second District (2nd Division)—September 4, 1975.

*Rehearing denied October 29, 1975.*

Lloyd E. Dyer, of Donovan, Atten, Mountcastle, Roberts & DaRosa, of Wheaton, for appellant.

Rathje, Woodward, Dyer, & Burt, of Wheaton, for appellee.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

Plaintiff appeals from a personal injury judgment entered on jury's verdict finding defendant not guilty, and from trial court's denial of plaintiff's post-trial motion for judgment notwithstanding the verdict. She contends that the trial court erred in denying her motion for a directed verdict or for judgment notwithstanding the verdict, or in the alternative, that she is entitled to a new trial based on the trial court's evidentiary and instructional errors.

The facts in the case are that at about 10:15 p.m. on August 30, 1968, plaintiff was riding as a guest in the right front seat of defendant's 1965 Dodge convertible. They were proceeding south on Oakwood Avenue, a two-lane residential street, between Grant and Chicago Avenues, in Downers Grove in a 25-m.p.h. zone. The defendant (then 18 years of age) was driving plaintiff (then 16 years of age) home from a snack bar following a date. After stopping at Grant defendant continued south, and

at a point in Oakwood Avenue where it curves to the left before reaching Chicago Avenue, the car went over the west curb, hit two trees and a stump and overturned, pinning the plaintiff underneath.

Plaintiff was hospitalized for six weeks. The injuries, which are not in issue, included a fracture through the roof of the hip joint, fractures of the pelvis and of the front of the left tibia, and severe soft tissue damage. She was prevented from returning to work for one year and will require additional surgery to improve her condition, including a "drop-foot" condition from which she still suffers.

The defendant, called as an adverse witness, testified that he was driving normally on Oakwood Avenue at 25 miles an hour, passed a parked car about 15 to 20 feet before the street started curving, and got back to his lane. Because of the darkness he stated he was unable to see further than 25 feet. After passing the parked car he "saw an oncoming car" about 25 feet away with bright lights, which was "taking the curve too fast to make it without coming on my side of the street"; that the oncoming car was partially in his lane of traffic; that he did not see the curb and remembered hitting the two trees but not the stump; that when he regained consciousness he was able to "wiggle" his foot out from under the car; that he knew plaintiff was under the car but heard no sound from her, and that he saw her at the hospital about a week later but did not talk to her about the accident.

Plaintiff produced the testimony of five disinterested witnesses who lived on Oakwood Avenue within a short distance north of the scene of the accident who either heard or saw defendant's car just before the accident. They testified variously that the car was going at a "high rate of speed," a "fast rate of speed," with "loud sound of acceleration," "louder than normal," "very fast," "really flying," "racing" with motor and tire noise "like fast cars" make, "sudden screeching and scraping," "like tires squealing," and "sort of a grinding" before the crash. One witness saw a northbound "white or light colored car going very slowly."

Mrs. Janice Neider testified that she was driving north on Oakwood Avenue in her light blue automobile at a maximum speed of 25 miles per hour with her dim lights on when she saw defendant's southbound car about one-half block north of hers; that defendant's car passed hers after she came out of the curve and on the straight-away; that defendant's car was going at an estimated speed of "at least 40 miles" per hour; after defendant's car passed hers and drove into the curb she heard a "loud bang" and in her rearview mirror saw a "big cloud" of "smoke or dust or something," but did not realize an accident had occurred until she was about a half a block away; that she kept driving until she reached

her girl friend's home farther on and from there called the police to report the accident.

Victor Savanna, a Downers Grove police officer, testified that he and his partner arrived at the scene a few minutes after the accident. He described the first aid they gave defendant and testified that after he called for assistance from the fire department to raise the car they proceeded to "extract" plaintiff from under the car and he generally described her position under the car and her injuries. He lighted up the area and the next morning he took various measurements and pointed out that by following tire marks defendant's vehicle traveled about 116 feet from the point where the car left the roadway until it reached the point where it turned over; that the car struck two trees and a stump, and the bark was taken off the trees all the way down to "where the whitewood pulp is." The next day he also made a diagram of the path of the vehicle by following the tire marks. The officer further testified that when he talked to defendant later that evening at the hospital defendant told him that as he was approaching the curve on Oakwood "his accelerator pedal stuck and his vehicle was picking up speed and the next thing he knew he went off the road and everything went black." Defendant said nothing to the officer about a northbound car forcing him off the road.

On cross-examination Officer Savanna testified that several days after the accident, in a conversation with plaintiff at the hospital, she stated that a northbound vehicle with bright lights appeared to be going quite fast, that she believed they passed a car parked on the west side of the street and as they passed it, defendant swerved to the right and that was all she could recall; that plaintiff said nothing about defendant's driving fast nor that defendant swerved to avoid the northbound vehicle. He also testified that when he took this statement from plaintiff she was in a hospital bed, appeared to be "in some physical pain" and was "slow" and he "had to repeatedly ask her questions trying to get answers from her."

Plaintiff testified that defendant "sped away" south on Oakwood from the stop sign at Grant, that he "accelerated," meaning that he stepped on the gas pedal "quickly and fast, heavily," that the car "picked up speed"; that there was a car parked on the west side of the street and that as defendant accelerated to an estimated speed of 40 to 50 miles per hour, plaintiff told him to stop; that when they were still north of the parked car they saw the northbound car before reaching the parked car; that after passing it defendant swerved the car to the right to get back into the southbound lane and the northbound car passed. That immediately after the car went over the curb. She then testified to her recover-

·ing consciousness, calling for help and her removal to the hospital and to the extent of her injuries.

She further testified that defendant called on her at the hospital about 1 week after the accident when she came out of intensive care and told her to refer any questions about the accident to him, otherwise to "tell them" that "it was just the accelerator that had stuck," "that he wasn't speeding and that the other car had been speeding": that she told him that that was not true. On cross-examination she testified that defendant's driving was "perfectly normal" until he reached the intersection of Grant and Oakwood Avenues.

Because prior to trial the trial court had entered an order *in limine* excluding certain testimony, plaintiff made an offer of proof in chambers that defendant had purchased a six-pack of beer at Lemont, Illinois, and had consumed at least two cans of beer although plaintiff was not sure whether he drank more, and that in the hospital defendant had told her that "nothing was to be mentioned about the [consumption of] beer and kept insisting that" she "wasn't going to be in trouble but he was." The only purpose for which plaintiff offered the testimony was not to show defendant's intoxication but for its possible bearing on defendant's credibility.

Defendant was the only witness to testify in his own behalf. While he admitted speaking to the plaintiff in the hospital about a week after the accident he denied making the statement to which she testified in court.

At the close of all the evidence the trial court denied plaintiff's motion for directed verdict on the issue of liability. The jury returned a verdict of not guilty and the trial court denied plaintiff's post-trial motion for judgment in her favor notwithstanding the verdict or in the alternative for a new trial.

Plaintiff contends that in view of the testimony of five disinterested witnesses as to the speed of defendant's vehicle immediately prior to the accident and the testimony of the plaintiff and Mrs. Neider estimating defendant's speed at in excess of 40 miles an hour, the trial court erred in refusing to direct a verdict in her favor on the issue of liability and in denying her motion for judgment notwithstanding the verdict. We agree.

In *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, defendant appealed from judgment on a jury verdict for the plaintiffs in a railroad crossing case. Although the plaintiffs and one witness testified that the crossing flashers were not operating prior to the collision, the great weight of the evidence was to the contrary. In pronouncing its now famous rule, the supreme court said:

"When the dubious probative value of the testimony of the

plaintiffs and Hazel Lindsey is considered in the light of the unequivocal testimony by persons with no apparent interest in the outcome of this lawsuit and the corroborative testimony of the railroad employees, we believe it may fairly be said that all of the evidence, viewed most favorably to plaintiffs so overwhelmingly favors defendant that no contrary verdict based on this evidence could ever stand." 37 Ill.2d 494, 511.

In the case at bar it is clear to us that "all of the evidence * * * so overwhelmingly favors" plaintiff, even after viewing it "most favorably" to defendant, that the trial court erred in refusing to direct a verdict for the plaintiff on the issue of liability. The defendant's testimony that his speed was 25 miles per hour was contradicted by his own statement to Officer Savanna the night of the accident that his accelerator pedal became stuck causing the car to speed. The other testimony established "overwhelmingly" that the defendant was driving at an unreasonable speed prior to the accident.

Under these circumstances it is unnecessary for us to consider other questions raised by this appeal.

For the reasons stated this case is reversed and remanded with instructions to enter judgment for the plaintiff on the issue of liability and to grant plaintiff a new trial on the question of damages only.

Reversed and remanded with directions.

T. MORAN and DIXON, JJ., concur.