(No. 48084.—

BARBARA MIZOWEK, Appellee, v. TONY DE FRANCO, Appellant.

*Opinion filed October 1, 1976.*

Rathje, Woodward, Dyer & Burt, of Wheaton (Robert E. Dyer, of counsel), for appellant.

Donovan, Atten, Mountcastle, Roberts & Da Rosa, of Wheaton (Lloyd E. Dyer, Jr., of counsel), for appellee.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

This appeal involves an action brought in the circuit court of Du Page County by the plaintiff, Barbara Mizowek, for personal injuries she received in an automobile collision while a passenger in a car driven by Tony De Franco, the defendant. Her complaint alleged willful and wanton conduct on the part of the defendant to state a cause of action under the Illinois guest statute, which at the time of the complaint required that a person riding in a motor vehicle as a guest without payment must show willful and wanton misconduct on the part of the driver to recover for injuries arising from the driver's conduct. (Ill. Rev. Stat. 1971, ch. 95½, par. 10–201.) The case proceeded to trial, and at the close of the evidence the plaintiff's motion for a directed verdict on the issue of liability was denied. The jury returned a verdict for the defendant, and judgment was entered for him after the plaintiff's post-trial motions for judgment notwithstanding the verdict, and, alternatively, for a new trial, were denied. The appellate court reversed and remanded with directions to enter judgment for the plaintiff on the issue of liability and to grant a new trial on the question of damages. (32 Ill. App. 3d 53.) We allowed the defendant's petition for leave to appeal under Rule 315 (58 Ill. 2d R. 315).

At 10:15 p.m. on August 30, 1968, the plaintiff was riding as a guest in the front seat of the defendant's 1965 Dodge convertible. The defendant was driving the plaintiff home following a date. They were proceeding south on Oakwood Avenue, a two-lane residential street in Downers Grove, which runs in a generally north-south direction. The speed limit was 25 miles per hour. The weather was clear and warm, and the concrete pavement was dry. There is a stop sign on Oakwood Avenue where it intersects with

Grant Avenue, and Oakwood then continues in a southerly direction for approximately one block before curving to the southeast in the shape of a quarter moon. The defendant stopped his car at the stop sign at Grant Avenue and then continued south on Oakwood until the car reached the curve, where it jumped the west curb. The auto traveled 116 feet, striking two trees and then a stump, which caused the car to overturn, pinning the plaintiff beneath it. The plaintiff sustained severe injuries which are not in question here.

The plaintiff called the defendant to testify as an adverse witness under section 60 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 60). The defendant stated that he had driven before on this portion of Oakwood Avenue and knew that the road curved. He testified that after making the stop at the intersection of Oakwood and Grant he proceeded south and reached a speed of 25 miles per hour. After passing a car parked on the approach to the curve he steered back into his own lane. Because there were no street lights in the immediate area he testified he had difficulty seeing. After passing the parked car he observed a car with bright lights coming around the curve in the defendant's lane of traffic at a high rate of speed. Blinded by the bright lights, he caused his car to swerve, and he remembered jumping the curb and hitting the two trees before losing consciousness. He testified that he went to the hospital about one week later to visit the plaintiff but did not discuss the accident with her.

Five persons who resided on Oakwood Avenue between Grant Avenue and the curve where the accident occurred were called as witnesses by the plaintiff. Lee Eichman testified that on that evening he was in his front room when he heard a car pass his house traveling south at a high rate of speed. He based this opinion on the sound of the engine, the length of time it took the car to pass his house, and the sound of the tires striking variations in the

level of the pavement. He then heard a "scrubbing" and "squealing" of tires from which he concluded there had been an auto accident.

Rachel Edwards testified that she was in her second-floor bedroom when she heard a car go by in a "loud manner" and then heard a "sudden screeching and scraping followed by a crash." She looked out her window and observed a light-colored northbound car traveling very slowly to the north of her house toward Grant Avenue.

Ann Snell testified that on the night in question she heard a fast-moving car accelerating and then looked out the window and observed the defendant's car traveling south. She then heard a thud and realized an accident had occurred.

Evidence depositions of Mr. and Mrs. George Vix were admitted into evidence. Amanda Vix testified that as she was about to close her front door she heard an engine racing and tires "bump[ing] along fast." She saw the defendant's car pass for about half a second and remarked to her husband: "That fellow is flying." Shortly thereafter she heard the sound of an impact. Her husband, George Vix, testified that he had heard the same sounds his wife had described.

Janice Neider testified that she was driving north on Oakwood Avenue in a light-blue Ford at 25 miles per hour with her dim lights on when she saw the defendant's southbound car about one-half block away. She stated that she was in her own lane and that the defendant's car passed her shortly after her car had come out of the curve onto the straight road. She said that the defendant's car sounded as if it was going quite fast, and she estimated his speed as 40 miles per hour. After passing the defendant's car she heard the sounds of a crash, and through her rear view mirror she saw a cloud of smoke or dust arise. She went to a friend's home a short distance away and telephoned the police. On cross-examination she admitted that in a police report, which she prepared shortly after

the accident, she stated that the defendant had jumped the curb before she had passed him. She said that her statement in the police report was not accurate.

Officer Victor Savanna, a Downers Grove policeman, testified that he and his partner arrived at the scene shortly after the accident. When he arrived he observed the defendant seated on the curb, bleeding profusely from the face. He assisted in freeing the plaintiff, who was beneath the defendant's car, and proceeded to the hospital, where he questioned the defendant. The defendant stated, the witness said, that "his accelerator pedal stuck and his vehicle was picking up speed and the next thing he knew he went off the road and everything went black." Officer Savanna stated that at this time the defendant said nothing about a speeding northbound car with bright lights forcing him off the road.

On cross-examination the witness testified that several days after the accident he interviewed the plaintiff at the hospital. He observed that she was in pain and was slow in responding to his questions. She said that as the defendant's vehicle came to the curve a northbound speeding auto with bright lights approached them and that the defendant swerved to the right as they passed the parked car on the west side of the street.

The plaintiff testified that the defendant accelerated from the stop sign at Grant Avenue to a speed of between 40 and 50 miles per hour when she told him to stop. She said that before they reached the parked car they could see the northbound car approaching. She testified that after the defendant passed the parked car he swerved to the right, the northbound car passed them, their car jumped the curb, and she lost consciousness. The plaintiff stated that the defendant had visited her about one week later in the hospital and told her to refer any questions about the accident to him or to tell anyone who asked that he had not been speeding. Rather, she should say, she testified, that it was the other car that had been speeding and that

the defendant's accelerator had become stuck. She said she told the defendant that was not what had happened. The plaintiff testified that she did not recall being interviewed by Officer Savanna at the hospital.

The appellate court concluded that under the evidence the trial court should have directed a verdict in favor of the plaintiff on the issue of liability following the standard announced in *Pedrick v. Peoria and Eastern R.R. Co.,* 37 Ill. 2d 494. The appellate court said that all the evidence when viewed most favorably to the defendant so overwhelmingly favored the plaintiff that no contrary verdict could ever stand. (32 Ill. App. 3d 53, 57.) The defendant contends here that the appellate court erred in holding that the trial court should have directed a verdict for the plaintiff.

In *Pedrick* this court announced the standard to be used in determining when a trial court should enter either a directed verdict or a judgment notwithstanding the verdict. It was said: "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d 494, 510; see also *Mundt v. Ragnar Benson, Inc.,* 61 Ill. 2d 151, 156-57.) We consider that, measuring by this standard, the appellate court erred in directing that a verdict in favor of the plaintiff should have been entered by the trial court.

The defendant testified that he was not exceeding the speed limit when he was forced from the road by another car with its bright lights on driving toward him. The testimony of the two principal witnesses 'against him, the plaintiff and Mrs. Neider, was partially impaired by prior inconsistent statements both witnesses had made to the police, according to other testimony. The plaintiff's statement to Officer Savanna did correspond to the defendant's testimony. The credibility of witnesses and the

weight to be given testimony are typically matters for a jury to consider. (*Finley v. New York Central R.R. Co.*, 19. Ill. 2d 428, 436; *Dowler v. New York, Chicago and St. Louis R.R. Co.*, 5 Ill. 2d 125, 129.) Too, the plaintiff here had the burden of proving willful and wanton conduct on the part of the defendant rather than his simple negligence. Considering the circumstances we cannot say that when all the evidence is viewed most favorably to the defendant it so overwhelmingly favors the plaintiff that no verdict in the defendant's favor could ever stand.

However, we do believe from a review of the evidence that the trial court should have granted the plaintiff's motion for a new trial. The standards relating to the direction of verdicts and to the granting of new trials are of course different. In *Pedrick* this court declared: "We have rather carefully preserved the distinction between the evidentiary situation which will require a new trial [citation], and that justifying direction of a verdict or judgment *n.o.v.* There is, in our judgment, excellent reason for so differentiating to be found in the radically different results of allowance of the two motions, and we believe a more nearly conclusive evidentiary situation ought to be required before a verdict is directed than is necessary to justify a new trial." (*Pedrick v. Peoria and Eastern R.R. Co.*, 37 Ill. 2d 494, 509-10.) On a motion for a new trial a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence. *Heideman v. Kelsey*, 414 Ill. 453, 466; *Millikin National Bank of Decatur v. Shellabarger Grain Products Co.*, 389 Ill. 196, 200; *Hunt v. Vermilion County Children's Home*, 381 Ill. 29, 34; 3A Nichols, Illinois Civil Practice sec. 3887, at 402 (1961).

Here, the defendant's testimony was the only evidence that the accident had occurred as he said it had, and that testimony was contradicted by his own statement to Officer Savanna that his accelerator pedal had become stuck, causing the car to accelerate. Although the testi-

mony of the plaintiff and of Janice Neider was partially inconsistent with prior statements they had given to the police, their claim that the defendant had been speeding was corroborated by the testimony of the five disinterested nearby residents. After reviewing all the evidence, we judge that though the standard for a directed verdict was not met, the jury's verdict was contrary to the manifest weight of the evidence and a new trial should have been granted.

The plaintiff contends the trial court erred in ruling that although she might testify that the defendant required that she lie about the circumstances of the accident she could not testify that the defendant had been drinking that evening or that he requested her to lie about his drinking. We consider that under the circumstances the ruling of the trial court was correct. The plaintiff specifically advised the trial court she was not seeking to show intoxication of the defendant. There was danger of prejudice to the defendant here when there was no showing of materiality of the proposed testimony, and the trial court did not abuse discretion in ruling as it did. See *Gilberto v. Nordtvedt,* 1 Ill. App. 3d 677; *Warp v. Whitmore,* 123 Ill. App. 2d 157; *Miller v. Chicago Transit Authority,* 3 Ill. App. 2d 223.

Nor did the trial court err in giving Illinois Pattern Jury Instruction Civil No. 60.02 to the jury over the plaintiff's objection. The instruction proceeds on the theory that a statutory violation by a third person may have been the sole proximate cause of an accident. Under the defendant's version of what occurred and his theory of the case the instruction was not inappropriate.

For the reasons given, the judgment of the appellate court is reversed and the cause remanded to the circuit court of Du Page County for a new trial.

*Reversed and remanded.*