# Illinois Official Reports

## Appellate Court

---

### *Egan v. McCullough*, 2013 IL App (1st) 122475

---

| | |
|---|---|
| Appellate Court Caption | ANNE MARIE EGAN, Independent Executor of the Estate of Sarah P. Conway, Deceased; JAMES O'TOOLE, Independent Executor of the Estate of Kathleen O'Toole, Deceased; and THERESE HEIDKAMP JOYA, Independent Executor of the Estate of Mary Therese Heidkamp, Deceased, Plaintiffs-Appellants, v. LYNNARD McCULLOUGH, HOGAN DEDICATED SERVICES, LLC, HOGAN PERSONNEL, LLC, and JOANNE STEENVELD, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-12-2475 |
| Filed | December 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the deaths of three passengers of a car struck by a truck while driving on an icy and snow-covered highway, the trial court did not abuse its discretion in refusing to give an instruction that at least one of the drivers was negligent and liable for the deaths, since there was substantial disputed evidence as to whether either driver was going too fast for conditions and whether the truck driver should have attempted to avoid the collision, and the determination of any negligence was left to the jury, which was free to find that both drivers acted reasonably; therefore, the verdict for all defendants was affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-L-9162; the Hon. Edward Washington, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Michael T. Gill, of Pfaff & Gill, Ltd., of Chicago, for appellants. |
| | Bradford Purcell, of Purcell & Wardrope, Edward M. Kay, of Clausen Miller, P.C., and Joseph DiPino, of Beverly & Pause, all of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Neville and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    The executors of the estates of three women killed when the car they were passengers in collided with a truck in DeKalb, Illinois, filed a wrongful death action against the driver of the car, the driver of the truck, and the truck driver's employer and its affiliates. Plaintiffs accused the driver of the car and the driver of the truck of traveling too fast for road conditions. Although evidence showed that both drivers were traveling below the posted speed limit, the plaintiffs argued that because it was snowing and the roads were icy, the drivers should have been driving even slower. The plaintiffs also alleged the truck driver was negligent in veering to the right and driving into a field in an effort to avoid the accident.

¶ 2    The jury returned a verdict in favor of all defendants. The jury also answered a special interrogatory as to the truck driver, finding him free from fault. Plaintiffs appealed arguing that in the absence of negligence on the part of the decedents, the circuit court erred in declining to instruct the jury that at least one of the defendants was negligent and thus liable to plaintiffs. But there were genuine issues of fact and liability for the jury to decide and the jury could find none of the defendants legally responsible for the deaths. The trial court did not err in refusing to instruct the jury that at least one defendant must be found liable for the accident that resulted in death of plaintiffs' decedents. We affirm.

¶ 3                                    BACKGROUND

¶ 4    The tragic accident that gives rise to this case occurred on December 1, 2008. That morning, defendant Joanne Steenveld, age 70, left her home in Skokie, Illinois, and picked up three friends and fellow parishioners, Sarah Conway, Kathleen O'Toole, and Mary Heidkamp, on the north side of Chicago to travel to DeKalb for the funeral of a friend's husband.

Steenveld drove down I-294 south to I-88; she exited northbound on Peace Road, drove past the intersection of Fairview Drive and into the city of DeKalb. After attending the service and a luncheon, at about 2 p.m., the four women began their return trip to Chicago.

¶ 5    Since it had been snowing off and on for most of the day, snow had accumulated on the roads in the area, though the extent to which it affected driving conditions was a matter of dispute. Steenveld planned to take the reverse route she took earlier. She was driving south on Peace Road approaching the intersection of Fairview Drive when she lost control of her vehicle, slid across the center line, into the northbound lane in front of a tractor trailer driven by defendant Lynnard McCullough. McCullough stepped on his brakes and veered to the right into an adjacent field to try to avoid a collision. But Steenveld's car continued to move in the direction of the field, and the vehicles collided there. Two of the car's passengers, Sarah Conway and Mary Heidkamp, died at the scene. Kathleen O'Toole survived the accident, was transferred to a hospital where she underwent surgery, but never regained consciousness. She died three weeks later on December 24, 2008. Steenveld was injured and airlifted to a hospital for treatment and was later released.

¶ 6    On September 29, 2010, plaintiffs filed a second amended complaint against Steenveld, McCullough, and Hogan Dedicated Services, LLC, Hogan Motor Leasing, LLC, and Hogan Personnel, LLC (Hogan), McCullough's employer and its affiliates. Plaintiffs alleged Steenveld and McCullough were negligent in operating their vehicles at speeds too fast for weather conditions and that McCullough was also negligent for leaving the roadway. Before trial, plaintiffs filed motion *in limine* number 13, asking the court to bar the parties, their attorneys, and witnesses from "[a]ny argument, evidence, reference or suggestion that anything other than the alleged negligence of the defendants caused or contributed to cause plaintiff's injuries." No objection was raised, and the circuit court granted the motion.

¶ 7    The evidence at trial showed that it was snowing on December 1, 2008, but witnesses presented conflicting testimony about the condition of Peace Road at the time of the accident. William Rozell was driving northbound on Peace Road, behind McCullough just before the accident. He testified that at 5 a.m. when he drove to work, southbound Peace Road was icy, causing his car to slide, but that when he was returning home at about 2 p.m., he had no problem controlling his vehicle. Rozell did not see McCullough's truck sliding or weaving. Anthony Jovanovich was also driving northbound on Peace Road at the time of the accident, in the vicinity of McCullough's truck. Jovanovich also testified that the roads were slushy and icy but that he had no problem controlling his vehicle. Illinois State Trooper James Glowinski, who responded to the accident, testified that the roads were slick but did not recall any ice. DeKalb County sheriff's detective John Sistema, who arrived at the scene about 30 or 40 minutes after the accident, described Peace Road as "icy, slushy, slippery, treacherous." Sheriff William Kominski testified that Peace Road is surrounded on both sides by farmland and "tends to ice up very quickly." He stated that when he arrived at the scene, Peace Road was "very icy."

¶ 8    Defendant Steenveld testified that when she drove from Chicago to DeKalb on the morning of December 1, 2008, it was snowing but that she had no difficulty controlling her vehicle. After leaving a luncheon following the funeral for the return trip home, Steenveld noticed it

was snowing and that snow was accumulating on the road. Although she had no recollection of her speed, she testified that it would have been her custom to travel well below the posted 55 miles per hour speed limit in the snow or rain and estimated that she was driving about 35 miles per hour. There was no other evidence presented regarding the speed at which Steenveld was driving. Steenveld testified that she was traveling southbound on Peace Road and recalled seeing a sign for I-88 to Chicago but remembers nothing after that until she was put on a helicopter for transfer to St. Anthony's Hospital in Rockford.

¶ 9 Lynnard McCullough testified that he is a professional truck driver and was working for Hogan on December 1, 2008. McCullough's job that day required him to pick up a full trailer at the Target distribution center, about 500 yards from the intersection of Peace Road and Fairview Drive, deliver it to a Target store in Oak Lawn, Illinois, and return to the distribution center with an empty trailer. On his return trip, McCullough was traveling northbound on Peace Road in the vicinity of Fairview Drive when he first saw Steenveld's car in the southbound lane. McCullough estimated his speed at about 35 to 40 miles per hour. Two witnesses, William Rozell and Anthony Jovanovich, who were driving behind McCullough estimated his speed at 40 to 45 miles per hour. The posted speed limit was 55 miles per hour. McCullough testified that when he first saw Steenveld's car, it appeared to be under control. The next time he saw the car, however, he noticed the driver had lost control, was "fishtailing," and crossing the centerline into the northbound lane. McCullough said he then applied his brakes to slow down the truck, in what he called a "controlled breaking" and steered toward the right and into a field east of the road. McCullough testified that he drove toward the right because the left was not an option, he did not think he could avoid the accident by continuing to drive straight, and he had been trained to avoid an oncoming vehicle by moving to the right if possible. McCullough said he then saw Steenveld's car shoot across the northbound lane and into the field, where the front of his truck struck the passenger side of the car. The impact occurred about eight feet east of northbound Peace Road.

¶ 10 The police who investigated the accident found no fault with McCullough's actions. DeKalb sheriff's deputy Kaminski, who was a first responder to the accident, testified that witnesses at the scene told him there was nothing unusual about the speed of the truck before the accident. He also stated that based on his interviews and investigation, he concluded that McCullough was not driving too fast for road conditions. Deputy Kaminski testified that McCullough made an evasive move to try to avoid the accident and had no criticism of McCullough's actions. Illinois State Police Trooper James Glowinski is a commercial vehicle officer and enforces United States Department of Transportation Regulations that apply to commercial motor vehicles in the State of Illinois, including those pertaining to driver qualifications and equipment regulations. Trooper Glowinski interviewed McCullough and inspected his truck. The inspection showed that there were no equipment violations and that the tractor trailer was in good mechanical condition with fully operational brakes.

¶ 11 Plaintiffs' trucking expert witness, Michael Williams, testified that McCullough was negligent in failing to recognize that Peace Road was slick and icy. He estimated McCullough was traveling at 45 miles per hour, which he asserted was too fast for conditions. He opined that had McCullough been driving at 30 miles per hour or less, he may have been able to stop

his truck and avoid the collision. On cross-examination, Williams acknowledged that the Illinois Vehicle Code (625 ILCS 5/1-100 *et seq*. (West 2010)) and federal regulations governing commercial motor vehicles did not require McCullough to drive 25 miles per hour below the posted speed limit. He also agreed no evidence existed that McCullough's truck slid or that he had lost control. Williams acknowledged that a driver's natural instinct when faced with an oncoming vehicle would be to steer to the right and that truck driving training manuals recommend truck drivers veer to the right when faced with an oncoming vehicle, if possible. But Williams asserted that McCullough could have avoided the accident by veering toward the left and into a safety lane between the southbound and northbound lanes of Peace Road.

¶ 12      Defendants' trucking expert, Lewis Grill, testified that McCullough moved at a reasonable speed because he breaked without sliding or losing control of the truck. Grill acknowledged that the commercial driver's license study guide recommends that a truck driver reduce speed by 30% on wet roads but testified that McCullough did not need to do that as an experienced truck driver. He further stated that McCullough acted correctly in trying to slow down his truck and veering to the right when he saw a car enter his lane.

¶ 13      Plaintiffs' accident reconstruction expert, Tom Feiereisen, presented three animated simulations regarding the accident. The first simulation showed how he believed the accident happened, assuming McCullough driving at 46 miles per hour and Steenveld driving at 45 miles per hour. The second simulation showed that if McCullough had stayed in his lane while driving between 42 and 51 miles per hour and Steenveld's car had been traveling 45 miles per hour, there would not have been a collision though it would have been close. Using a third simulation, Feiereisen asserted that if McCullough had been traveling 30 miles per hour or less and Steenveld driving 45 miles per hour, McCullough would have had much more time to react and could have easily stopped the truck and avoided the collision. On cross-examination, Feiereisen acknowledged that he would not advise drivers to continue driving straight when a car crosses the center line into their lane of travel. He also acknowledged that McCullough could not know what path Steenveld's car would travel once it crossed the centerline and that he had only 1.5 seconds to perceive the dangerous situation, decide on an action plan, and then react.

¶ 14      During the jury instruction conference, plaintiffs tendered instruction number 31, a modified Illinois Pattern Jury Instructions, Civil, No. 3.06 (2011), relating to directed findings. Plaintiffs' proposed modified IPI Civil No. 3.06 stated as follows:

> "The Court has determined that this collision is not one that occurred in the absence of negligence and that one or more of the defendants is liable to the plaintiff. You will need to decide whether defendant, Joan Steenveld, or defendant Lynnard McCullough, Hogan Dedicated Services, LLC, and Hogan Personnel, LLC, or all of the defendants are liable to the plaintiffs."

¶ 15      Plaintiffs argued that because motion *in limine* number 13, barring evidence or argument that anything other than defendants' alleged negligence caused plaintiff's injuries, was granted without objection and there was no allegation of contributory negligence on the part of Steenveld's passengers, the only verdict that could be consistent with the evidence would be a finding that one or more of the defendants were negligent.

¶ 16   The circuit court denied plaintiffs' proposed jury instruction. The court stated it would be improper to instruct the jury it had "determined that this collision is not one that occurred in the absence of negligence," because it had not heard a directed verdict motion. The court further noted that neither driver had conceded negligence or liability and that the court never made a determination that one or both drivers did not have a viable defense. Finding that this was an issue for the jury to decide, the court concluded "[w]hen we look at this set of permutations of liability, just because this accident occurred does not mean that there has to be a verdict under all fact scenarios considered by this jury that at least one of these defendants is negligent, and I have not made that determination."

¶ 17   On February 27, 2012, a unanimous jury verdict was entered in favor of all defendants. Without objection from plaintiffs, the circuit court permitted the jury to answer a special interrogatory that read, "Did Lynnard McCullough act as a reasonably careful person would act under the circumstances shown by the evidence?" The jury answered in the affirmative. Plaintiffs filed a posttrial motion for a new trial, which the trial court denied on July 18, 2012, finding "there were ample facts for the jury to come to the conclusion that it did in this case." Plaintiffs timely appealed to this court, asking us to vacate the verdict and grant a new trial on all issues.

¶ 18                                          ANALYSIS
¶ 19                                      Standard of Review
¶ 20   Plaintiffs contend the trial court's decision not to instruct the jury that it must find one of the defendants liable corresponds to the denial of a motion for a directed verdict and, therefore, should be reviewed *de novo*. *Harris v. Thompson*, 2012 IL 112525, ¶ 15 ("An adverse ruling on a motion for a directed verdict *** is reviewed *de novo*."). We disagree. A trial court has discretion to determine which instructions to give the jury and that determination will not be disturbed absent an abuse of that discretion. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273-74 (2002). A circuit court does not abuse its discretion regarding jury instructions if the instructions in their entirety "fairly, fully, and comprehensively apprise[ ] the jury of the relevant legal principles." *Id*. A reviewing court ordinarily will not reverse a trial court for giving faulty instructions unless they plainly misled the jury and resulted in prejudice to the appellant. *Id*. at 274.

¶ 21                                      Jury Instruction
¶ 22   Plaintiffs argue that based on facts and evidence presented a trial, at least one of the defendants was negligent and thus liable for the death of plaintiff's decedents. Plaintiffs assert that Steenveld's counsel conceded that point when he stated during opening statements:

> "On the issue of how this accident happened, who is responsible for it, you will have to decide based upon the evidence after you've heard from all the witnesses and all the experts as to whether Ms. Steenveld and Mr. McCullough are at fault or only one of them is at fault."

¶ 23    Plaintiffs contend that since the three women who died in the accident bear no responsibility for it and there was no claim of contributory negligence, the trial court should have instructed the jury that it must return a verdict finding at least one of the defendants liable.

¶ 24    Plaintiffs also argue that their motion *in limine* 13 barring "any argument, evidence, reference or suggestion that anything other than the alleged negligence of the defendants caused or contributed to cause plaintiffs' injuries," which the trial court granted without objection, removed the possibility that anything other than the negligence of one or more of the defendants was liable for the accident. Plaintiffs contend that the trial court's refusal to give jury instruction number 31 conflicted with the motion *in limine* and with the absence of any evidence at trial demonstrating a nonnegligent cause for the accident.

¶ 25    Plaintiffs acknowledge the rarity of the jury instruction they requested but rely on *Millette v. Radosta*, 84 Ill. App. 3d 5, 26-27 (1980), as precedent. In *Millette*, defendant drove his car into plaintiff's truck, injuring plaintiff. Defendant claimed that he lost control of the car because when he tried passing plaintiff's truck on the left, the "car was simply steering itself." *Id*. at 9. The car had been subject to a manufacturer's recall due to a high likelihood of damage to the steering system, which, if not repaired, could cause loss of steering control. *Id*. at 9-10. Defendant testified he had gone to the dealership to replace the defective part more than once but was told the part was not in stock. *Id*. at 10. He also testified the dealer checked the car and told him not to worry about the steering system. *Id*. He testified no one told him to stop driving the car. *Id*.

¶ 26    The plaintiff truck driver sued the driver of the car, the car manufacturer, and the dealer. *Id*. at 7. The driver of the car counterclaimed against the other defendants. *Id*. On plaintiff's motion, the trial court directed a verdict in plaintiff's favor on the issue of contributory negligence. *Id*. at 18. The jury returned a verdict for the plaintiff and against all defendants and in favor of the driver of the car on his counterclaim against the manufacturer and dealer. *Id*. All of the defendants appealed the verdict arguing, in part, that the trial court erred in instructing the jury that it must find for the plaintiff and against one or more of the defendants and in giving the jury a verdict form that did not permit a not-guilty verdict as to all defendants. *Id*. at 26. As the appellate court stated, "[t]he basic question before this court is whether based on all the evidence a verdict for all three defendants could ever stand." *Id*. The appellate court found that "it could not," because: (1) as a matter of law, the plaintiff was not contributorily negligent and (2) there was no evidence of some unknown cause or intervening act of God. *Id*. The appellate court stated:

> " '[W]e believe a presumption of negligence does arise when the occurrence is shown to proceed from a performance of acts of such character, that when due care is taken, no injury ordinarily results from it. An automobile properly operated does not, under normal conditions, collide with another automobile or strike a building. Where two automobiles collide under normal conditions, it will be presumed that the collision occurred from the negligent operation of one or both colliding automobiles.' " *Id*. at 27 (quoting *Krump v. Highlander Ice Cream Co.*, 30 Ill. App. 2d 103, 105-07 (1961)).

¶ 27     Because a verdict for all three defendants could not stand, the appellate court found reasonable the trial court's refusal to submit a verdict form allowing the jury to find all three defendants not liable. *Id.*

¶ 28     Plaintiffs contend that like the plaintiff in *Millette*, no negligence could be imputed to the three passengers here and there also was no evidence of some unknown cause or act of God. Therefore, the trial court should have instructed the jury that it could not return a verdict in favor of all defendants. This case is distinguishable in several key respects, however. First, while contributory negligence is not an issue on the part of the plaintiffs in either case, in *Millette*, the evidence showed that the car that caused the accident was defective and that all of the defendants knew that the defect could cause an accident. Therefore, in that case, the injuries arose from either a negligent driver, a negligent manufacturer that sold a defective car, or a negligent dealer that sold the car and did not advise the driver that it should not be driven. Absent that defect, the accident would not have happened. The defendants' knowledge of the defect meant at least one of them was negligent.

¶ 29     Conversely, here, neither of the vehicles was defective and no one alleged advance knowledge by either driver of any problems that could cause an accident. The only allegations of negligence involved both drivers traveling too fast for road conditions and McCullough's decision to drive off the road. Significantly, defendants did not concede those allegations. And the evidence at trial regarding the fact that both vehicles were traveling under the speed limit and McCullough's decision to veer right when faced with an oncoming vehicle was uncontroverted. Steenveld, who could not remember the accident, testified that her custom and practice was to drive well below the speed limit in snow and guessed her speed at 35 miles per hour, a full 20 miles below the 55-miles-per-hour limit in effect on Peace Road. No witnesses challenged this assertion. McCullough testified to driving well below the speed limit at 35 or 40 miles per hour. Other witnesses estimated McCullough moving a little faster, at about 40 to 45 miles per hour. Deputy Kaminski, who investigated the accident, did not consider McCullough to have been driving too fast for road conditions, and he had no criticism of McCullough's decision to veer right to try to avoid the accident. Other witnesses also acknowledged that maneuvering to the right when a car crosses over the center line and into the path of a truck comprised a normal response for a truck driver and a course of action recommended in truck driving training manuals.

¶ 30     That the accident did not occur under "normal conditions" constitutes another characteristic distinguishing this case from *Millette*. As plaintiffs tried to establish throughout the trial, snow covered Peace Road when the accident occurred, and witnesses offered differing opinions about the condition of the road and the effect it may have had on driving conditions. Therefore, unlike in *Millette*, it cannot be said that under the conditions present on Peace Road on December 1, 2008, an accident could not have happened unless one or both of the parties were negligent. Indeed, if a juror believed Steenveld's testimony that she was driving only 35 miles per hour and the testimony of other witnesses who said that McCullough was driving 40 miles per hour and was not going too fast for road conditions, it follows that the accident could have happened even though neither party acted negligently.

¶ 31 Plaintiffs contend that motion *in limine* number 13, which barred the parties from presenting "any argument, evidence, reference or suggestion that anything other than the alleged negligence of the defendants caused or contributed to cause plaintiff's injuries" precluded defendants from arguing that the weather rather than their own negligence was the cause of the accident. We disagree. Plaintiffs alleged defendants negligently drove too fast for conditions. This allegation necessarily required the jury to consider the nature of the conditions at the time of the accident. Throughout the trial, plaintiffs presented evidence and testimony about whether Peace Road was snow-covered and icy and whether other drivers in the area had difficulties controlling their vehicles. While defendants could not argue the weather was the *per se* cause of the accident, they were not precluded from arguing that, in light of the road conditions, their actions were not negligent.

¶ 32 Where a substantial factual dispute is disclosed by the evidence, the question of plaintiff's due care or defendant's negligence should be given to the jury for determination. *Korpalski v. Lyman*, 114 Ill. App. 3d 563, 566 (1983). Here, as noted, a substantial amount of disputed evidence existed as to whether Steenveld or McCullough was driving too fast for conditions and whether McCullough should have driven off the highway to try to avoid the accident. As a result, it fell within the province of the jury to determine the negligence, if any, of the defendants. Therefore, the trial court did not abuse its discretion in refusing to grant the plaintiffs' requested jury instruction.

¶ 33                                     Motion for a New Trial

¶ 34 In considering an appeal from a jury verdict, a reviewing court may not simply reweigh the evidence and substitute its judgment for that of the jury. *Snelson v. Kamm*, 204 Ill. 2d 1, 35 (2003). A new trial should be granted only when the verdict goes against the manifest weight of the evidence. *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006) (citing *Mizowek v. De Franco*, 64 Ill. 2d 303, 310 (1976)). A court of review will not reverse a circuit court's decision with respect to a motion for a new trial unless it finds the circuit court abused its discretion, and the reviewing court must be "mindful that credibility determinations and the resolution of inconsistencies and conflicts in testimony are for the jury." *York*, 222 Ill. 2d at 179. An abuse of discretion occurs only if "no reasonable person would take the view adopted by the trial court." *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177 (2003).

¶ 35 We do not find the jury's verdict against the manifest weight of the evidence or that the circuit court abused its discretion in denying plaintiffs' motion. As we stated, Steenveld testified, without contradiction, to driving at 35 miles per hour, about 20 miles per hour below the posted speed limit. The evidence showed that McCullough similarly traveled below the speed limit, by 10 to 15 miles per hour. McCullough took evasive measures to try to avoid the accident by driving off the road, which he testified he was trained to do and which most witnesses agreed would be a driver's natural instinct when faced with an oncoming vehicle. Although simulations showed that if McCullough had veered to the left or had been driving much slower the accident might have been avoided, the jury was still free to conclude that both drivers acted as a reasonably careful person under the circumstances, and were not negligent in

causing the accident.

¶ 36                                CONCLUSION

¶ 37          For the reasons set forth below, we affirm the circuit court.

¶ 38          Affirmed.