NOTICE
Decision filed 08/31/16. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2016 IL App (5th) 150557

NO. 5-15-0557

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| LARRY CLARO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-L-236 |
| | ) | |
| SHIRLEY ANN DeLONG, | ) | Honorable |
| | ) | Vincent J. Lopinot, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Presiding Justice Schwarm and Justice Stewart concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Larry Claro, appeals from a judgment of the circuit court of St. Clair County in favor of defendant, Shirley Ann DeLong, entered after a jury returned a general verdict in favor of defendant in a negligence action brought by plaintiff after defendant collided with plaintiff's vehicle.  The issues on appeal are (1) whether the verdict in favor of defendant was against the manifest weight of the evidence and (2) whether plaintiff was entitled to a judgment notwithstanding verdict (judgment *n.o.v.*).  For the following reasons, we reverse and remand with directions to enter judgment in favor of plaintiff and to hold a new trial on the issue of damages only.

1

¶ 2                                                    FACTS

¶ 3     On January 11, 2013, plaintiff was driving his Honda Accord and was stopped at a stoplight when he was rear-ended by defendant, who was driving a Dodge Durango. Prior to trial, defendant admitted liability, and a jury trial was held on the issue of damages only. At the time of trial, plaintiff was 57 years old. The accident in question occurred when plaintiff was 55.

¶ 4     Plaintiff works as an auto body repairman. He testified he started working at his father's body shop as a young man. Over the years, he has worked in several different auto body shops. At the time of trial, he was employed by an auto body shop doing heavy repair work with the chance to possibly buy the business from its current owners.

¶ 5     Defendant testified she was stopped behind plaintiff at a stoplight. She estimated she was stopped for five or six seconds when the brake released "like there was air in the line or something. It just went down." Her vehicle then rolled two or three feet into plaintiff's vehicle. She said there was "very little impact." She testified that both she and plaintiff exited their vehicles to check to see if everyone was okay, which they were. The parties called the police, took care of business, and both drove away from the scene. Defendant admitted plaintiff was certainly caught off guard and surprised at the time of impact. She said she drove away from the scene even though her brakes malfunctioned because the brakes had never done that before, and she "just assumed everything was okay."

¶ 6     Plaintiff testified defendant struck him while she was traveling between 15 to 20 miles per hour and that immediately after the accident defendant was flustered.

Defendant opened her left rear door, fumbled around on the floorboard, and retrieved a cell phone.  Plaintiff did not immediately seek medical attention.  Plaintiff testified in the days and weeks following the accident, he was sore and aching in his right shoulder.  He took ibuprofen and thought the pain would get better, but the pain worsened.

¶ 7    Plaintiff continued to work and did not miss any time from his job as a result of the accident.  However, due to increasing pain, he got to the point where he could not sleep well.  His girlfriend recommended he go to a chiropractor, Dr. Dale Fischer.  Plaintiff sought treatment with Dr. Fischer, and that treatment initially helped.  However, when his recovery hit a plateau, Dr. Fischer referred him to Dr. Matthew Gornet, an orthopedic surgeon.

¶ 8    Plaintiff saw Dr. Gornet three times in 2013.  Plaintiff went back to see Dr. Gornet on June 11, 2015, after plaintiff continued to experience neck pain.  Ultimately, Dr. Gornet recommended a steroid injection, which helped reduce plaintiff's symptoms.  However, plaintiff still experiences pain in the right side of his neck and down his shoulder, especially when he is doing something strenuous.  Plaintiff testified the pain is tolerable if he is sitting in a chair watching television, but at the end of a 10-hour work shift, his pain is "not good."

¶ 9    Plaintiff testified that he suffered a herniated disc in his lower back 13 years ago as a result of picking up a tailgate off the floor.  He missed six weeks of work due to that injury, but was up to light duty after three months and ultimately released for full duty.  Plaintiff testified that prior to the instant accident, he did not take ibuprofen for pain, but he now takes it two to three times per week.

¶ 10    Plaintiff fixed his own car.  He said the amount of damage sustained in the impact was much greater than damage that would be caused by tapping a bumper.  Plaintiff explained that it did not appear as though his car sustained much damage, but when he took the bumper off, he found significant damage and that the impact "pushed in the rear body panel, which is actually a structural piece that ties the whole rear of the vehicle together for safety.  And the area of the taillight would be pushed in a little bit.  And there was also damage on the trunk lid."

¶ 11    Plaintiff further testified about medical bills he incurred as a result of the accident for services provided by Dr. Fischer, Dr. Gornet, and MRI Partners of Chesterfield, and Dr. Kaylea Boutwell.  Plaintiff's exhibit No. 1 shows medical bills totaling $17,772.79.

¶ 12    Both Dr. Fischer and Dr. Gornet testified the symptoms plaintiff experienced were consistent with a rear-end collision and opined that within a reasonable degree of medical certainty plaintiff's complaints and need for treatment were related to the January 11, 2013, accident.  Dr. Fischer testified that he initially evaluated plaintiff on February 14, 2013, at which time plaintiff gave a history of a motor vehicle accident in January. Plaintiff said he did not have any neck or shoulder pain prior to the accident.  Dr. Fischer noted that plaintiff could not even hold his head up straight on the day of his initial examination and that upon physical examination plaintiff demonstrated a significantly limited range of motion.

¶ 13    Dr. Fischer testified it is extremely common for patients to wait to seek treatment after an injury in the hope that the condition will resolve itself.  Dr. Fischer testified the X-rays he took of plaintiff showed more than just degenerative changes, and he initially

4

diagnosed plaintiff with at least a severe strain of the cervical spine. Dr. Fischer initially recommended conservative treatment through ultrasound and supplementation, after which plaintiff's pain decreased from a 10 to a 5 on the pain scale. When plaintiff's pain plateaued at that level, Dr. Fischer referred plaintiff to Dr. Gornet.

¶ 14    Dr. Gornet, a board-certified orthopedic surgeon whose practice is devoted exclusively to spinal surgery, testified that plaintiff's choice to see a chiropractor rather than a physician was appropriate for his symptoms and it is common for Dr. Fischer to refer patients to him if chiropractic care does not alleviate all of a patient's symptoms. Dr. Gornet testified plaintiff has structural injury to his cervical spine, which was causing his neck, right shoulder, and arm pain. An MRI performed on August 12, 2013, showed two herniated discs. Plaintiff has right-sided herniation at C5-6, causing narrowing of the nerve channel, and a smaller herniation at C6-7. Dr. Gornet believes the herniation at C5-6 is due to the car accident, but the herniation at C6-7 is due to degenerative changes. Dr. Gornet treated plaintiff on June 10, August 12, and November 11, 2013. Dr. Gornet did not place any restrictions on plaintiff.

¶ 15    Plaintiff testified he tried to live with his symptoms, but when his symptoms did not dissipate, he returned to Dr. Gornet on June 11, 2015. Plaintiff confirmed he did not sustain any new injuries since the 2013 auto accident. Dr. Gornet ordered a second cervical spine MRI to ensure plaintiff's pathology had not changed. The results of the second MRI revealed the same pathology and confirmed that the herniated discs were the source of plaintiff's symptoms. Both MRI films were introduced into evidence.

¶ 16   Dr. Gornet recommended a steroid injection, which calms inflammation and relieves symptoms.  Dr. Gornet referred plaintiff to Dr. Boutwell, who performed the injection in July 2015.  When plaintiff came back to Dr. Gornet after the injection, plaintiff said his conditions improved after the injection.  Dr. Gornet advised plaintiff to live with his symptoms as long as possible.  He testified plaintiff can receive additional injections, but if the injections do not continue to work, Dr. Gornet would recommend disc replacement surgery, which would cost around $60,000.  Dr Gornet testified that symptoms like plaintiff's "tend to always come back."

¶ 17   Dr. Gornet testified that within a reasonable degree of medical certainty, plaintiff's injuries and probable need for additional treatment are related to the January 11, 2013, auto accident, noting that plaintiff had no significant problems before the accident. Defense counsel questioned Dr. Gornet about defendant's exhibit No. 1, in which Dr. Fischer noted that plaintiff sustained a herniated disc 13 years ago.  Dr. Gornet testified on redirect that there was no mention of where the herniated disc was located and no mention of a prior cervical MRI and nothing to indicate that plaintiff required any injections prior to the accident.

¶ 18   Both plaintiff's Verdict Form A and defendant's General Verdict Form C were submitted to the jury.  The general verdict was submitted over plaintiff's objection.  After deliberations, the jury returned the general verdict form finding in favor of defendant and against plaintiff.  No damages were awarded.  Plaintiff moved for judgment *n.o.v.*, which the trial court denied.  Plaintiff filed a timely notice of appeal.

¶ 19                                ANALYSIS

¶ 20    The first issue is whether the verdict in favor of defendant and against plaintiff is against the manifest weight of the evidence.  Plaintiff contends that here where defendant admitted liability and there was uncontroverted evidence linking his injuries to the accident, the jury's general verdict is against the manifest weight of the evidence and he is entitled to a new trial on the issue of damages.  Defendant responds that even though she admitted liability, there was sufficient evidence in the record for the jury to conclude that plaintiff was not injured as a proximate result of the accident.  After careful consideration, we agree with plaintiff.

¶ 21    A reviewing court will set aside a jury's verdict if it is " 'contrary to the manifest weight of the evidence.' "  *Maple v. Gustafson*, 151 Ill. 2d 445, 454, 603 N.E.2d 508, 512 (1992) (quoting *Mizowek v. De Franco*, 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36 (1976)).  A verdict is against the manifest weight of the evidence in cases in which the opposite conclusion is clearly evident or the findings of the jury are unreasonable, arbitrary, and not based upon the evidence.  *Id.*  Because the jury entered a general verdict, we do not know on what basis it made its findings.  *Id.* at 449, 603 N.E.2d at 510.  For example, we do not know whether the jury entered its verdict in favor of defendant because it found no causal connection between plaintiff's alleged injuries and the accident or whether it found plaintiff suffered no damages as a result of the accident.  However, we find the evidence at trial overwhelmingly established plaintiff was injured in the collision and suffered damages, and a contrary verdict cannot stand.

¶ 22 The instant case is similar to *Wiggins v. Bonsack*, 2014 IL App (5th) 130123, 16 N.E.3d 393. In that case, the plaintiff appealed after a jury returned a general verdict in favor of defendant in an automobile case. The record showed the accident occurred when the defendant was attempting to make a left turn out of a gas station at a busy intersection, which required her to cross two lanes of traffic headed in the opposite direction. *Id.* ¶ 17. After a man in a red truck made a waving motion, the defendant assumed it was safe for her to make the turn. *Id.* The defendant admitted she could not see the lane next to the red truck and never saw the plaintiff's car prior to impact. *Id.* The defendant thought the man in the red truck was mainly at fault but admitted she was also at fault for trusting the man in the red truck when she could not see into the lane of oncoming southbound traffic in which the plaintiff was traveling. *Id.* The defendant also admitted the plaintiff did nothing to cause the accident. *Id.*

¶ 23 The plaintiff argued the evidence at trial overwhelmingly established she was injured in the collision and a contrary verdict could never stand. *Id.* ¶ 22. The plaintiff offered the testimony of her chiropractor, who testified the plaintiff's injuries were consistent with the type of accident that occurred and her delay in treatment was not unusual given her tender years of 15 and her belief the symptoms would disappear. The defendant offered no evidence to the contrary. *Id.* ¶ 26. Nevertheless, the defendant argued the evidence did not establish the plaintiff was injured in the collision, and she was not required to present her own medical testimony but properly discredited the plaintiff and her chiropractor on cross-examination. *Id.* The defendant asserted that

8

given the delay in symptoms and an 87-day delay in treatment, plaintiff was not entitled to either a judgment *n.o.v.* or a new trial. *Id.*

¶ 24 We reversed the general verdict in favor of the defendant and remanded with directions to enter judgment in favor of the plaintiff and hold a new trial on the issue of damages, because the record was clear that the defendant's negligence was the proximate cause of the accident and it was difficult to imagine how an inference could be drawn that the plaintiff did not suffer any actual injury due to defendant's negligence. *Id.* ¶¶ 26-27. We disagree with defendant's assertion that the instant case is inapposite of *Wiggins.* We find the instant case even stronger than *Wiggins* because here defendant actually admitted liability before the trial even started. The only issue was damages.

¶ 25 Plaintiff's treating chiropractor and orthopedic surgeon both testified there was a causal connection between the accident and plaintiff's injuries. Both medical professionals testified it was not unreasonable for plaintiff not to immediately seek medical attention. Defendant offered no contrary medical opinion. Moreover, there was no evidence of any intervening accident that would have caused plaintiff's injuries. While there was a question of a prior herniation, it is clear that was a low back injury some 13 years prior to the accident in question. The instant injury and resulting pain were in plaintiff's neck and right shoulder.

¶ 26 Even considering degenerative changes have occurred in plaintiff and might be causing him some pain, the record is clear that plaintiff suffered injuries due to the rear-end collision caused by defendant. Dr. Fischer testified X-rays he took showed more than mere degenerative changes in plaintiff. He initially diagnosed plaintiff with at least

9

a severe strain of the cervical spine. Dr. Gornet later diagnosed plaintiff with a herniated disc at C5-6, which he said was caused by defendant's January 11, 2013, rear-end collision with plaintiff. Plaintiff testified about medical bills he incurred as a result of the accident with defendant. Under these circumstances, we fail to see how a reasonable inference could be drawn from the evidence presented that plaintiff did not actually suffer any injuries or damages due to defendant's negligence. Due to our determination on the first issue, we need not address the second issue.

¶ 27     For the foregoing reasons, we reverse the judgment of the circuit court of St. Clair County and remand with directions to hold a new trial on the issue of plaintiff's damages.

¶ 28     Reversed and remanded with directions.

2016 IL App (5th) 150557

NO. 5-15-0557

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| LARRY CLARO, | ) | Appeal from the |
| | ) | Circuit Court of |
|     Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 14-L-236 |
| | ) | |
| SHIRLEY ANN DeLONG, | ) | Honorable |
| | ) | Vincent J. Lopinot, |
|     Defendant-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed:**       **August 31, 2016**

_____

**Justices:**    Honorable Richard P. Goldenhersh, J.

Honorable S. Gene Schwarm, P.J., and
Honorable Bruce D. Stewart, J.,
Concur

_____

**Attorneys for Appellant**    Michelle M. Rich, Kristina D. Cooksey, Thomas C. Rich, Thomas C. Rich, P.C., 6 Executive Drive, Suite 3, Fairview Heights, IL 62208

_____

**Attorneys for Appellee**    Daniel L. Bradley, Darrell J. Flesner, DeFranco & Bradley, P.C., 141 Market Place, Suite 104, Fairview Heights, IL 62208

_____